SALT LAKE COUNTY v. AMERICAN SURETY CO. OF NEW YORK.

No. 4045.   Decided January 14, 1924.   (222 Pac. 600.)

1. COUNTIES—TREASURER AND SURETY HELD TO STRICT LIABILITY FOR FUNDS.  In view of Comp. Laws 1917, § 1492, providing that "the county treasurer must safely keep all money * * * till disbursed according to law, * * * and he shall be liable therefor on his official bond," and the requirements of public policy, the rule of strict liability of the treasurer, and consequently of the surety on his official bond for funds lost by failure of a depository bank, though there was no negligence, will be applied, notwithstanding section 4500, authorizing, but not requiring, the treasurer to deposit in a bank.

2. COUNTIES—TREASURER NEED NOT BE JOINED IN ACTION AGAINST SURETY ON BOND.  Under Comp. Laws 1917, § 6511, providing that persons severally liable on the same instrument may all or any of them be included in the same action, at option of plaintiff, neither plaintiff nor the court need join the county treasurer in an action against the surety on his official bond, notwithstanding sections 6507, 6519, as to making defendant or ordering brought in any person who is a necessary party to a complete determination of the controversy or the question involved, and the equity rule as to making a person a party to avoid a multiplicity of suits.[1]

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea*, Judge.

---

[1] *Scowcroft* v. *Jouflas*, 57 Utah, 490, 195 Pac. 633; *Garland* v. *McMartin*, 8 Utah, 150, 35 Pac. 365.

Action by Salt Lake County against the American Surety Company of New York. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Cheney, Jensen, Holman & Stephens* and *Bagley, Fabian, Clendenin & Judd,* all of Salt Lake City, for appellant.

*A. E. Moreton,* Co. Atty., and *Geo. G. Armstrong,* Asst. Co. Atty., both of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff sued the defendant American Surety Company of New York as surety upon the official bond of E. J. Groesbeck, as county treasurer of Salt Lake county, to recover the sum of $200,000; that being the total amount of the surety company's obligation.

It is alleged in the complaint that the bond was executed in January, 1921, and that the said Groesbeck had continued to act as said county treasurer until the commencement of the action in 1922; that during his term of office he had received into his possession large sums of money, and had deposited the same in the National City Bank of Salt Lake City, which bank on the 17th day of January, 1922, closed its doors, and went into the hands of a receiver appointed by the Comptroller of Currency of the United States government; that at said time the said county treasurer had on deposit with said bank the sum of $648,094.29; that since the bank went into the hands of the receiver the plaintiff has received from sureties of said bank $225,000, and from the said receiver $113,618.86, making a total received by plaintiff of $338,618.86, leaving a balance due the plaintiff of $304,475.43.

It is then alleged in the complaint that, notwithstanding demands have been made upon said county treasurer and upon said surety company, defendant, for payment of said

balance they have failed, neglected and refused to pay the same or any part thereof.

The surety bond is attached as an exhibit to the complaint, is in the usual form of a corporate surety bond, and concludes as follows:

"The condition of this obligation is such that, whereas the above bounden principal has been duly elected to the office of county treasurer in and for Salt Lake county for a term beginning January 3, 1921; now therefore, if the said Edward J. Groesbeck shall well, truly and faithfully perform all official duties now required of him by law and also such additional duties as may be imposed on him by any law of the state subsequently enacted, and if he shall account for and pay over and deliver to the person or officer entitled to receive the same, all moneys or other property that may come into his hands as such county treasurer, then this obligation to be null and void and of no effect; otherwise to be and remain in full force and virtue."

The defendant, surety company, demurred to the complaint, both generally and specially, alleging as special grounds that the county treasurer, E. J. Groesbeck, was a proper and necessary party to the action. The defendant, surety company, at the same time filed its answer to plaintiff's complaint and a cross-complaint against E. J. Groesbeck, county treasurer. Groesbeck appeared and filed a demurrer to the cross-complaint which was sustained by the court because plaintiff had not made Groesbeck a codefendant. Comp. Laws Utah 1917, § 6581. Defendant surety company, then moved that Groesbeck be made a party defendant, alleging that he was a necessary party to a complete determination of the action. The motion was denied. Defendant's demurrer to the complaint was also denied. In the meantime plaintiff moved to strike from defendant's answer, certain matter as irrelevant and immaterial and not constituting a defense to the action.

The matter sought to be stricken from the answer was to the effect that the county treasurer, E. J. Groesbeck, had deposited said moneys in the National City bank of Salt Lake City with the knowledge, acquiescence, and approval of plaintiff, in pursuance of Comp. Laws 1917, § 4500, requiring interest to be paid thereon; that interest was paid thereon and accepted by plaintiff; that said Groesbeck re-

quired the bank to furnish a depository bond, which was approved by him in accordance with the provisions of said section; that Groesbeck deposited said money in good faith and in the exercise of reasonable care, and neither he nor the defendant, surety company, had any knowledge or information that led them to suspect that said bank was not in a sound financial condition; that at the time of making said deposit, and at all times thereafter, until it went into the hands of the receiver, said bank was in good standing in the community, enjoyed a good reputation, and was reputed to be solvent. Other matters covered by the motion tended to show good faith and reasonable care on the part of Groesbeck in selecting said bank as a depository and in requiring it to give security for the money due the plaintiff, among which securities it is alleged that said Groesbeck and plaintiff held certain bonds of the Chrystal Lake Farm Lands Company of the face value of $360,000, and defendant alleges upon its information and belief that the market value of said bonds is sufficient to fully protect, pay, and discharge plaintiff's demand against the defendant.

The answer contains other matter covered by the motion to strike, all of which tend to show good faith, care, and diligence on the part of Groesbeck, and that plaintiff has not and will not suffer any damages in the premises.

Plaintiff's motion to strike was granted, and the matter above alleged stricken from the answer.

The case was tried to the court without a jury. Evidence was taken as to the amount due plaintiff and the date of plaintiff's demand upon defendant for payment.

The court found for plaintiff in the sum of $247,666.01, and interest thereon at 8 per cent. per annum from September 10, 1922. From the judgment entered thereon, defendant, surety company, appeals. The issues involved are succinctly stated by appellant as follows:

"(1)   Defendant's right, if any, to have E. J. Groesbeck, the county treasurer and the principal in the bonds sued upon, made a party to the action.

"(2)   The character and extent of the liability of E. J. Groesbeck as county treasurer for loss of county funds occurring without negligence, bad faith, or dereliction in duty upon his part, and the

consequent liability of the surety company for county funds lost under such circumstances."

While the natural order of procedure in the trial court was to dispose of the questions in the order above stated, in my opinion it is more logical here to dispose of them in their reverse order, for if appellant's contention as to its second proposition is sound there is no cause of action against either principal or surety.

Under its second proposition the contention of both appellant and respondent is stated in appellant's brief as follows:

"The theory of defendant and appellant in this connection is that a county treasurer and his surety are not liable for public funds lost through the failure of a depository bank, where the funds were deposited in accordance with section 4500, Compiled Laws of Utah 1917, and where the county treasurer acted in good faith and without fault or negligence, not only in making the deposit, but also from the time of making the deposit to the closing of the bank. On the other hand it is contended by plaintiff and respondent that a county treasurer and his surety are insurers of public funds; that their obligation is absolute, and admits of no defense of diligence, faithfulness, skill, honesty, or lawfulness in the making of the deposit."

The statute referred to in the above excerpt will be considered hereinafter and quoted at length. Independent of that statute appellant, while conceding that respondent's position is upheld by a majority of the courts, including the Supreme Court of the United States, contends, nevertheless, that the doctrine is—

"so harsh, so unnecessary, and so far in conflict with the general principles of the common law affecting the liability of public officers that in a state not already committed to the doctrine (as in Utah) the court should be reluctant to follow it."

There can be no question but that the overwhelming preponderance of judicial authority, numerically speaking at least is against appellant's contention and in favor of the strict liability rule upon which respondent relies. The cases sustaining the rule are altogether too numerous to mention much less to review in detail. It is safe to say, however, that the courts of more than half the states in the Union, as well as the Supreme Court of the United States, have

subscribed to the doctrine of strict liability, while the courts of six or seven states only have held to the contrary. Some of the states last referred to justify their holding under special statute peremptorily requiring the officer receiving public money to deposit it in banks designated by the county commissioners.

As conveying some idea of the numerical disparity between courts upholding the strict liability rule and those holding to the contrary respondent calls our attention to the note to *Cameron* v. *Hicks,* 17 Ann. Cas. 929, in which the annotator says:

"The great weight of authority sustains the following propositions with respect to the liability of a public officer and his sureties for the loss of public moneys: Where the statute in direct terms or from its general tenor imposes the duty to pay over public money received and held as such and no condition limiting that obligation is discoverable in the statute, the obligation thus imposed and assumed by the officer will be deemed to be absolute, and the fact that the money has been lost either through theft, robbery, bank failure, accidental fire, or other cause, without his fault, does not constitute a defense to an action for its recovery. The rule of the responsibility of a bailee for hire is not applicable to such a case. When the condition of the officer's bond is that he will faithfully discharge the duties of the office, and when the statute, as above stated, imposes the duty of payment or accountability for the money without condition, the obligors of the bond are subject to the same high degree of responsibility. The reasons upon which these propositions rest are to be found in the unqualified terms of the contract and in considerations of public policy."

Then follow the cases from twenty-seven states and the Supreme Court of the United States as supporting the text, while the courts of six states only have held to the contrary, some of which, as before stated, justify under special statutes.

Mechem on Public Officers, in sections 298, 299, 300, and 301, indulges in a somewhat illuminating discussion of the question, and classifies the grounds upon which the courts have reached their conclusions. In section 298 the author says: "One view is based upon the strict language of the bond." In section 299 he says: "A second view, somewhat analogous to the last, is based upon the requirements of the public policy." He quotes at considerable length from

the opinion of McLean, J., in *United States* v. *Prescott*, 3 How. 578, 11 L. Ed. 734, said to be the leading case in favor of the majority rule. In section 300, Mechem says: "A third view is based upon the assumption that by force of the statutes governing the subject, the officer becomes, in effect, the debtor of the public." In section 301, he states the fourth view, in which he says: "By this view the officer is regarded as standing in the position as a bailee for hire." He is therefore not responsible for a loss occurring without fault on his part. The author thinks the latter view is more consonant with reason and justice, but admits there are only a few cases supporting it. We refer to Mechem specially because of the careful analysis given of the different theories upon which the respective rules are based.

In the opinion of the writer we need not indulge in refinements as to the grounds upon which the rule of strict liability is based nor need we resort to the general principles of the common law. The statutes of this state make the county treasurer liable on his official bond without any qualification whatever. Comp. Laws 1917, § 1492, reads:

"The county treasurer must safely keep all money belonging to this state, or to any city or county of this state, until disbursed according to law. He shall not lend the same, and he shall be liable therefor on his official bond."

In view of the statute just quoted, as well as the matter of public policy which "requires that every depositary of the public money should be held to a strict accountability," as stated in *United States* v. *Prescott*, supra, we are forced to the conclusion that the rule of strict liability should be applied in this jurisdiction unless Comp. Laws 1917, § 4500, also relied on by appellant, calls for a modification of the rule. That section reads as follows:·

"Any public officer having public funds in his custody may deposit the same, or any part thereof, with any bank incorporated under the National Banking Act and doing business in this state, or with any bank or trust company incorporated under the laws of and engaged in business in this state; provided, that he requires such depository to pay interest on all funds so deposited at a rate of not less than 2 per cent. per annum, and that he take from such depository collateral security or a good and sufficient surety company bond or a personal bond approved by him and sufficient

in amount to fully protect such funds; provided, that the, cost of any official bonds required to be furnished by any public treasurer shall be paid out of funds in the respective treasuries; provided, that the interest received under the provisions of this title by the state treasurer shall be placed in the general fund."

Appellant's contention is that the statute is mandatory, and that the county treasurer could be compelled by mandatory proceedings to deposit the money at interest as authorized by the statute. But, whether mandatory or permissive, appellant insists that in view of the statute the rule of strict liability should not be enforced.

It must be conceded that the language of the statute is permissive rather than mandatory. "May" is used instead of "shall." The officer appears to be merely *authorized* to make the deposit but not *required*. Another feature is somewhat significant. He may deposit all *"or any part thereof."* If the statute were mandatory in its requirement as to depositing the money, why should the officer be permitted to deposit only an infinitesimal part, perhaps, instead of being required to deposit the whole amount received? If mandamus proceedings were instituted against the treasurer to compel him to deposit the money as authorized in the statute relied on it is difficult to conceive of any legal principle upon which the action could be maintained. Statutes relating to the same subject in other states have been called to our attention, but they are not similar to the Utah statute in any material respect. As notable instances appellant cites the following cases: *Holt* v. *Cronin*, 79 Neb. 424, 112 N. W. 561; *Hinton* v. *State*, 57 Okl. 777, 156 Pac. 161; *City of Livingston* v. *Woods*, 20 Mont. 91, 49 Pac. 441.

In *Holt* v. *Cronin*, supra, the Nebraska statute in mandatory terms requires the treasurer to deposit the funds received in banks designated by the county board, and the security required from the bank so selected is approved by the board.

In *Hinton* v. *State*, supra, the Oklahoma statute in the respects above mentioned is substantially similar, in that its terms are mandatory, and the board of commissioners select the depository and approve the security.

In *City of Livingston* v. *Woods,* supra, both the statute of Montana and the city ordinance required the treasurer to deposit the funds in a bank or banks. The requirement is mandatory, but it appears that the treasurer in that case selected the bank. Hunt, J., concurred in the opinion solely on the ground that the statute was mandatory in its requirement.

The difference between the foregoing statutes and the Utah statute is so pronounced as to emphasize the fact that the Utah Legislature evidently intended merely to authorize the treasurer *in his discretion* to deposit the public funds, or any part thereof in banks selected *by* himself, provided he did so on the conditions prescribed by the statute.

If it is a fact that the statute is only permissive, can it be successfully contended that it in any sense modifies the rule of strict liability, either in favor of the treasurer or his surety? We confess our inability to see why the statute should have such effect. No case has been called to our attention suggesting any reason why the statute should be so interpreted. We are therefore irresistibly led to the conclusion that, notwithstanding the provisions of section 4500, the rule of strict liability in the handling of public funds by a county treasurer in this jurisdiction should be enforced.

This leads us to a consideration of appellant's first proposition—that the defendant had the right to have E. J. Groesbeck, the county treasurer and principal in the bond sued on, made a party to the action.

The trial court denied the motion of the surety company to make the county treasurer a party defendant apparently upon the ground that the plaintiff under the provisions of Comp. Laws 1917, § 6511, had the option to sue any or all of the parties severally liable on the bond, as it might elect. Section 6511 reads as follows:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may all, or any of them, be included in the same action, at the option of the plaintiff."

Appellant's counsel, in their brief, say:

"We submit that section 6511 does not cover, and is not intended to cover, the situation presented in the instant case. The trial court seemed to be of the opinion that principals and their sureties are within the language of section 6511."

Whether counsel by the language quoted mean to be understood as doubting the applicability of section 6511 to any case against a surety on an official bond, or whether their doubts are restricted to the particular case on account of special circumstances we are unable to determine.

In Pomeroy, Code Remedies (4th Ed.) § 301, the author discussing this section of the Code shows that it not only applies to sureties on official bonds, but that—

"There is no limit upon the kind of contract from which this several liability may arise, providing it is in writing. The broad language of the clause includes any and every species of written contract."

But appellant appears to place its chief reliance on Comp. Laws 1917, §§ 6507 and 6519. The material parts of the sections are as follows:

6507. "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

6519. "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties; the court must then order them to be brought in."

Pomeroy, supra, § 315, discussing the provision last quoted, says:

"The issues between the original parties are to be determined, if that can be done without prejudice to the rights of others, or by saving the rights of others; if this be possible, the cause should be adjudicated as it was presented for decision. If a complete determination of the controversy cannot be had without the presence of other parties, the court must cause them to be brought in. The force and effect of the whole provision depend upon the interpretation given to the clause, 'when a complete determination of the controversy cannot be had without the presence of other parties.' To use the language of an eminent judge which has been repeatedly approved by other courts in different states, this clearly

means, 'when there are other persons, not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined.' "

The issue here between the original parties is the right of the plaintiff to recover from the surety company on the treasurer's official bond the sum of $200,000, the amount of the surety company's obligation. The treasurer defaulted in the sum of $247,666.01. Demand was made upon both the treasurer and appellant for payment, and payment refused. Under the rule of strict liability hereinbefore determined appellant is primarily liable to plaintiff for the full amount of its obligation. 29 Cyc. 1465. It is inconceivable that the determination of the issue thus presented between the original parties can prejudice the rights of others, or that it is necessary to ascertain and settle the rights of others in order to determine the single issue thus presented. Neither can it be said, as far as appellant's obligation is concerned, that Groesbeck the treasurer claims an interest therein adverse to the plaintiff. So that we are unable to see that the provisions of either of the sections last quoted lend any support to appellant's contention that it was the absolute duty of the court to make Groesbeck a party to the action. If the court, in the exercise of its discretion, had granted appellant's motion to make Groesbeck a party, and plaintiff or Groesbeck had appealed upon that issue, a different question would be presented. But even in that case the court would be confronted with the decision of the court in *Garland* v. *McMartin,* 8 Utah, 150, 35 Pac. 365, cited by respondent, in which the judgment of the trial court was reversed solely upon the ground that appellant was wrongfully made a party by order of the court. We cite the case without comment as tending to show that the bringing in of new parties is not even a matter of discretion, where the party brought in is not necessary to a determination of the issues between the original parties.

Respondent also calls the attention of the court to the case of *Scowcroft* v. *Jouflas,* 57 Utah, 490, 195 Pac. 633, recently decided by this court. The headnote states the point involved and the decision of the court:

"Where defendants guaranteed payment for goods sold to an-
other and agreed that on failure to make payments plaintiff should
be entitled to bring action directly against the guarantors without
exhausting remedies against the debtors, a direct action, without
making the debtors parties was warranted, particularly in view of
Comp. Laws 1917, § 6511, providing that persons severally liable
may all, or any of them, be included in the same action at the
option of plaintiff."

In that case defendant demurred to the complaint on the
ground that the principal debtors were not made parties de-
fendant.     The demurrer was overruled.     Defendant then
moved that the principal debtors be made parties by order of
the court.   The motion was also denied.   The plaintiff had
judgment, and defendant appealed.   The only issues pre-
sented on appeal were the rulings of the court on defendant's
demurrer and motion.   This court affirmed the judgment on
the authority of section 6511, hereinbefore quoted.   The ques-
tion involved in that case is not readily distinguishable from
the question presented here.   The successive steps taken by
defendant in that case to bring in new parties were practi-
cally identical with the steps taken by appellant in the instant
case.   Both cases were cases at law, and the contract of guar-
anty in that case conferred upon plaintiff the same rights in
respect to suing any or all of the parties as are conferred
upon plaintiff in the case at bar by section 6511.   Respond-
ent's contention that the *Scowcroft Case* is a case in point on
the question now before the court appears to have consider-
able merit.

At the oral hearing of the instant case the writer, as well
as other members of the court, were somewhat impressed
with the view that the treasurer ought to have been made
a party to the action to avoid a multiplicity of suits.   Such
procedure, at least, is sanctioned in equity cases where
the situation of the parties is similar to that of the
parties in the case at bar.   See concluding sentences
in Pomeroy, supra, § 315, and cases cited in the note.   The
writer is still of opinion that in justice the plaintiff ought
to have joined the treasurer with the surety as a defendant
when the action was commenced, in order that the rights of
the surety as against its principal might be determined in

the same action if the surety should elect to apply for such relief. As we have determined the questions involved, such procedure would not have necessarily delayed plaintiff's judgment against the surety, for, in any event, under the strict liability rule the plaintiff would be entitled to judgment whenever it appeared that the treasurer had defaulted in payment, on proper demand. But notwithstanding these views the plaintiff appears to have kept within its rights under the plain provisions of a positive statute which permitted it to sue the surety alone. It being a law case, in view of the previous decisions of the court interpreting the statutes to which we have referred, we do not feel justified in remanding the case for further proceedings.

For the reasons stated, the judgment is affirmed at appellant's cost.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J. I concur with Mr. Justice THURMAN in his conclusion that the defendant is unconditionally and absolutely liable to the plaintiff as bondsman of the county treasurer of Salt Lake county, and that Comp. Laws Utah 1917, § 4500, in no way, affects that liability as between the plaintiff and the defendant.

In view, however, that the Legislature must have intended that the indemnity bond which is provided for by the provisions of that section should likewise be effective and constitute security for the funds deposited pursuant to that section, therefore, under the circumstances of the case at bar, namely, that where the money is deposited by the county treasurer pursuant to the provisions of section 4500, and an indemnity bond is executed pursuant to the provisions of that section by the treasurer's depository, and the loss of the money deposited is not occasioned through the wrongful act of the treasurer, or through some wrongful act of a thief, or some agency for which neither the treasurer nor his depository is responsible, but is lost while being used in the ordinary business affairs of the depository, or through his fault, I am of the opinion that while the treasurer's bond should still be held unconditionally liable in an action by

the county, nevertheless the treasurer's bondsman should also have the right to have recourse to the indemnity bond of the depository which was executed pursuant to the provisions of section 4500. As to whether, under the circumstances stated, the treasurer's bondsman should be permitted to recover the full amount he was required to pay upon his bond, or whether his recovery should be limited to a pro rata share of the loss, only so as to equalize and apportion the loss between the depository's bond and the treasurer's bond, I am not now prepared to say. Nor is it necessary that that question be now determined. In my judgment, however, the treasurer's bondsman should be permitted to have recourse to the depository's bond, either to the full extent of his liability, or at least to his pro rata share of such liability.

In order to reach the foregoing result, the entry of judgment against the treasurer's bondsman should, however, not be postponed, nor should its enforcement be delayed to any extent. If the treasurer's bondsman should, however, timely and in a proper manner request the trial court to make the parties who are interested in the indemnity bond, as well as the county treasurer, parties to the action for the purpose of making a full adjustment of all equities as hereinbefore outlined, then, in my judgment, the court should require all parties to appear in the action and should adjust the equities as above indicated. To follow the procedure outlined would in no way conflict with the rights of the county to have the amount due on the treasurer's bond speedily paid, nor would it interfere with any of the provisions of our Code of Civil Procedure, but would be in strict harmony with it, in that it would in one action, and at the least possible expense, adjust all matters arising by virtue of section 4500. As before stated, it certainly was the intention of the Legislature to cast some liability upon the depository bond, and, that being so, that liability could be enforced by following the foregoing suggestions without in the least injuring any one.

I am of the opinion, therefore, that in this case the district court should have required all parties interested in the bonds

herein referred to to be made parties to the action, but without postponing or delaying judgment on the treasurer's bond. In view, however, that the defendant has not been prejudiced in any substantial right by the refusal of the district court to comply with its request, the judgment should nevertheless be affirmed, and I therefore concur in its affirmance.