NATIONAL SURETY CO. v. SALT LAKE COUNTY et al.*

AMERICAN INDEMNITY CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1925.)

Nos. 6819, 6820.

1. Subrogation ⊂═⊃28 — Right unenforceable until whole debt paid.

Right of subrogation cannot be enforced until whole debt is paid, and until creditor is wholly satisfied there can be no interference with his rights and securities, which might even possibly prejudice or embarrass collection of residue of his claim.

2. Counties ⊂═⊃94(I)—Depositaries ⊂═⊃8—Subrogation ⊂═⊃28—Depository of county moneys debtor of treasurer, not of county; sureties of such depository on insolvency of bank not entitled to subrogation until treasurer repaid in full.

In view of Comp. Laws Utah 1917, § 4500, county treasurer is absolutely liable to the county for repayment of county moneys in his hands, and, by depositing such money in bank, the bank becomes debtor of the treasurer, not of the county, and on insolvency of such bank its sureties giving bonds for less than amount deposited have no right to participate in dividends and collateral securities until bank's debt to treasurer is wholly paid, as against surety on his official bond, payment of which made the county whole.

3. Depositaries ⊂═⊃13—Sureties of depository cannot charge negligence of county treasurer on existence of facts due to bank's misrepresentation and fraud.

In controversy between sureties of insolvent depositary of county moneys and the surety on treasurer's official bond as to right of subrogation to dividends, negligence of treasurer in taking collateral security cannot be predicated on fact that deposit was greater than treasurer's books showed, or that collateral securities taken were not worth par, which circumstances were due to fraud and misrepresentation of bank and hence not available to sureties.

4. Subrogation ⊂═⊃33(I)—Surety not denied interest accruing during litigation, where, had it paid claim without litigation, same amount of interest would have accrued.

Surety on official bond of county treasurer should not be denied interest on amount it was required to pay as against other parties claiming subrogation to funds of insolvent depositary, merely because interest accrued during litigation caused by its resistance of liability, where, had it paid its obligation without litigation, it would have been entitled to same amount of interest.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Bills in equity by the National Surety Company and by the American Indemnity Company against Salt Lake County and others. Decrees for defendants, and plaintiffs separately appeal. Affirmed.

Arthur E. Moreton, of Salt Lake City, Utah, for appellants.

John Jensen, of Salt Lake City, Utah (A. M. Cheney, of Salt Lake City, Utah, Frank E. Holman, of Seattle, Wash., and L. R. Martineau, Jr., and Harold M. Stephens, both of Salt Lake City, Utah, on the brief), for appellees.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and FARIS, District Judges.

FARIS, District Judge. These cases involve the question of appellants' right to share, by way of subrogation, in certain dividends in the hands of one Jenkins, and accruing from assets, which came into the hands of Jenkins, as receiver of the National City Bank of Salt Lake City, Utah, which failed on the 17th day of January, 1922; as also the right of appellants to participate in the proceeds of certain securities in the hands of one Groesbeck. The situation and status of the parties, so far as the pleadings and the manner in which, severally, these parties got into court are concerned, are not important; but some of the facts are necessary to an understanding of the case and to its decision.

Groesbeck was the county treasurer of Salt Lake county, Utah, and as such executed and delivered to Salt Lake county, on the 3d day of January, 1921, an official fidelity bond in the sum of $200,000, with the American Surety Company as surety therein. In this bond, as forecast above, Salt Lake county, Utah, was the obligee.

Under the permissive provisions of section 4500, Comp. Laws of Utah 1917, Groesbeck deposited the money of Salt Lake county, which came to his hands as county treasurer, in the National City Bank, and of such funds, so held by him, there was on deposit, when the bank failed, the sum of $643,094.29. The statute mentioned may be important to an understanding and disposition of the contentions urged pro and con by the parties. It reads thus:

"Any public officer having public funds in his custody may deposit the same, or any part thereof, with any bank incorporated under the national banking act and doing business in this state, or with any bank or trust company incorporated under the laws of and engaged in business in this state; provided, that he requires such depository to

*Rehearing denied June 27, 1925.

pay interest on all funds so deposited at a rate of not less than 2 per cent. per annum and that he take from such depository collateral security or a good and sufficient surety company bond or a personal bond approved by him and sufficient in amount to fully protect such funds; provided, that the cost of any official bonds required to be furnished by any public treasurer shall be paid out of funds in the respective treasuries; provided, that the interest received under the provisions of this title by the state treasurer shall be placed in the general fund." Section 4500, Comp. Stats. 1917.

Pursuant to the provisions and conditions of the above section, Groesbeck took from the National City Bank a surety bond, with the bank as principal and the appellant National Surety Company as surety, in the sum of $125,000, and a like bond from the Fidelity & Deposit Company in the sum of $75,000, as also a similar bond of the Massachusetts Bonding & Insurance Company in the sum of $25,000; in each of which bonds, "Groesbeck, treasurer of Salt Lake county, Utah," was the obligee. The bank also put up with Groesbeck, as collateral security to further secure the payment by the bank of the money deposited therein by him as such treasurer, $360,000, par value, of the bonds of the Crystal Lake Farms Company.

The bond of the Fidelity & Deposit Company contained an express provision that on the payment by it of the sum of $75,000, the amount for which it became liable as a surety, it should receive dividends, pro rata with other creditors, out of the assets of the bank. Such dividends it has gotten and is now getting, pursuant to an assignment to it by Groesbeck, and it is not complaining here. The bond executed by appellant National Surety Company had no express provision as to subrogation. The Massachusetts Bonding & Insurance Company for some reason, not necessary to state, even if it were known, does not complain here.

Salt Lake county, has been paid in full thus: By National Surety Company, appellant, $125,000; by Massachusetts Bonding & Insurance Company, $25,000; by Fidelity & Deposit Company, $75,000 (all paid to Groesbeck for the benefit of Salt Lake county); by the American Surety Company, $200,000 (paid to Salt Lake county, obligee therein, on the fidelity bond of Groesbeck); by the sum of $170,428.28, being a 30 per cent. dividend, paid to the county by the bank's receiver; and by the sum of $47,666.01, out of a further dividend of $56,809.42, in the hands of the receiver, and now apportionable. The county's right to this sum of $47,666.01, out of the dividend now apportionable, is, it is said in the brief of appellant National Surety Company, conceded. So there are left in dispute here only the balance of this dividend, to wit, $9,143.41, plus participation in future dividends, if any, and whatever sum may be derived from the sale of the Crystal Lake Farms bonds, the par value of which is $360,000; actual value, neither clear nor important. These bonds were assigned by Groesbeck to the American Surety Company, between whom and appellant National Surety Company the contest here is waged. The right of American Indemnity Company, appellant in case No. 6820, is a derivative one, dependent wholly upon recovery by the National Surety Company; so, no further reference need be made as to it, or as to its appeal till the end of the discussion.

The single question is whether, upon the facts stated, the law and the equities give these remaining dividends and the proceeds of the Crystal Lake Farms bonds, after the county has been paid in full, to the appellant National Surety Company or to the appellee, American Surety Company. The learned trial court held that the American Surety Company is entitled to all funds derived and to be derived from such dividends and bonds, till it shall have been paid the sum of $223,362.15, the total sum paid by it on its fidelity bond, including interest, and with interest on the basic sum, at the rate of 8 per cent., from February 29, 1924, and that the appellant National Surety Company shall be postponed in participation in such funds till the appellee American Surety Company, shall have been paid in full.

The correctness of this decree is assailed by appellant, and such correctness of it is in various allegations assigned as error, for that it is contrary to law and equity.

It is conceded by counsel for appellee that the money which Groesbeck deposited in the bank was held by him, in trust, for Salt Lake county; but it is insisted by appellee that the situation, and the conditions of the several bonds and the legal obligations created thereby, had the ultimate effect to make Groesbeck the debtor of the county, and to make the bank the debtor of Groesbeck. In short, that when Salt Lake county turned over to Groesbeck the sum of $643,000 (in round sum) Groesbeck became indebted to the county in that sum, and when Groesbeck deposited this same $643,000 in the bank, the latter became indebted to Groesbeck in that sum. From this premise it is insisted that it

follows that Groesbeck, having taken some precaution to secure the payment back to him by the bank of this $643,000, in that he required his debtor to give a bond with the National Surety Company, and others as sureties, and to put up as further security bonds of the Crystal Lake Farms Company, is entitled to be paid in full, either by the bank, from dividends out of its wrecked assets, from the bonds of the depositary sureties, or from the collateral securities in his hands, or, if so much shall be required, from all these several sources. And that when Groesbeck shall have been paid in full by the bank, or its sureties (the appellant, and its associates on the depositary bonds), then Groesbeck will owe the appellee American Surety Company such sum as it shall have been compelled to pay for him as a guarantor, or surety for his fidelity. Appellants, in effect, contend contra.

The correctness of this insistence seems plausible if not indisputable. But the contention is strenuously made by appellants that the county, the cestui que trust, having been paid in full, what remains should be equally divided between those who thus made the county whole. We think this contention in a manner begs the question, for that it leaves out of consideration the conceded fact that appellant National Surety Company, and its associates, the so-called depositary sureties, did not pay by $200,000 all that the bank owed to Groesbeck, or that Groesbeck owed to the county, though concededly they did pay the full sums of their several obligations. The appellee American Surety Company, under its direct obligation to the county, paid the county the sum of $200,000, with interest, and the dividends, and the Crystal Lake Farms bonds, now here in dispute, are to the extent of $200,000, relieved from use to that end.

[1] The rule applicable to this situation seems to be fairly well settled. That rule is that, "The right of subrogation cannot be enforced until the whole debt is paid. And until the creditor be wholly satisfied, there ought and can be no interference with his rights or his securities, which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim." New Jersey, etc., R. R. v. Wortendyke, 27 N. J. Eq. 658.

To the same effect is the case of Knaffl v. Knoxville, etc., Co., 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181, wherein it is said: "A surety is not entitled to subrogation until the debt is paid in full, the creditor in the meantime left in control of the debt, and all the remedies for collection. A pro tanto assignment or subrogation will not be allowed. The reason is that subrogation is a creature of equity and will never be allowed to the prejudice of the creditor. Harlan v. Sweeny, 1 Lea, 686; Gillian v. Esselman, 5 Sneed, 86; 37 Cyc. 408."

The confusion in the case at bar arises from a mistaken view as to the identity of the actual creditor of the bank, as also the identity of the company, the money of which, in part made this creditor whole. The case of American Surety Co. v. Bank (C. C. A.) 294 F. 609, largely relied on by appellant, furnishes no comfort to the contention made. The rule deducible from the cases is that till the creditor is paid in full, no right of subrogation exists in favor of sureties who pay a part of the debt. In short, the creditor may insist on getting his full pound of flesh before others are allowed to sit at the banquet board.

[2] If the bond of appellant National Surety Company had been made to the county of Salt Lake, as obligee, or if section 4500, supra, of the statutes of Utah, had required it so to be made, or perhaps, even if the above section had made it absolutely obligatory upon Groesbeck to put the money of the county in some bank, there might be some force in the contention here urged. But the policy of the law of Utah seems, on casual view, to render the county treasurer absolutely liable to the county for the repayment to the county of all money belonging thereto, which may come to his hands as such treasurer. He is merely permitted to deposit such money in a bank, but without, by so doing, being able to shift the primary obligation for repayment from himself directly to the bank. We cannot see that the fact, that in some aspects the money so deposited is, by the bank, held as a trust fund for the county, has the effect to make the county, upon all views, the creditor of the bank. The treasurer is yet the debtor of the county, and the bank is the debtor of the treasurer.

[3] We are not convinced that there is any force in the contention that the treasurer was negligent in taking the collateral security mentioned in the record. From an examination of the record it does not seem to be proven whether this collateral was or was not, when taken worth less than par. If it was worth par, and the evidence in the record is too indefinite to determine whether it was or not, then the sum of the so-called depositary bonds and this collateral security so nearly equaled the amount which the treasurer ought to have had on deposit, as to

preclude the notion of negligence in failing to take sufficient security. If the sum so on deposit was more by $50,000 than the books of the treasurer showed, and this seems to be conceded, this difference was clearly due to the fraud of the bank which was the principal of the appellant National Surety Company on the depositary bond.

Concretely, this contention of negligence is bottomed upon the views: (a) That the amount on deposit when the bank failed exceeded the sum total of the security held by Groesbeck from the bank, and this was not in compliance with the statute quoted; and (b) that a part of this security, namely, the bonds of the Crystal Lake Farms Company, were not worth par, and again Groesbeck violated the statute. But while the evidence is not clear touching whether or not these bonds were worth par, yet it makes no difference in the case. This for the reason that the cashier of the bank assured Groesbeck that these bonds were worth par, and on this assurance he took them, and so the alleged negligence of Groesbeck was induced by the misrepresentations of appellant's principal. Again, whatever difference exists between the sum of the deposit and the sum total of the security held by Groesbeck arises from the fraudulent conversion by the bank of $50,000, which had the effect to make the deposit $50,000 more than Groesbeck's books showed it to be. This difference was due to the bank's fraudulent failure to pay the above sum on orders from Groesbeck, which sum it ought to have paid and which Groesbeck believed it had paid. Obviously, the bank cannot complain of its own fraud, nor can its surety, for ordinarily "a surety cannot be placed in a more favorable position than the principal." 37 Cyc. 429.

[4] Lastly, it is contended that appellee American Surety Company, ought not to have been allowed interest in the sum of $23,362.12, which accrued pending its resistance by litigation of its liability to pay at all. Abstractly, the contention is interesting and seems to smack of justice, at least, of that variety called in literature poetical justice. But concretely, this casual view is found not to be well taken in point of natural justice and equity and in view of the situation existing; for, while the appellee was resisting its liability to pay the amount of its fidelity bond, the matter of the winding up of the wrecked bank's affairs was also pending. Only shortly has enough been gotten from this wreck to pay out of dividends the balance due the county. Save the sum of about $9,000, around which, in part, the instant controversy rages, no fund has yet appeared out of which either party disputing here could have gotten one cent. So, plainly, the situation falls into the category denominated, in homely vernacular, "six of one and half a dozen of the other." In other words, if interest had not accrued while the appellee was resisting by litigation its liability to pay its bond, the identical interest here involved would have accrued from the time of any voluntary payment to the date of the decree below. So, the fact of recalcitrancy, necessitating litigation, has in no wise affected the matter of interest, or the amount thereof. Interest would have been due the appellee in either event. Therefore, in the final analysis, this contention is but a corollary of the question already discussed and ruled against the appellants.

We are constrained to conclude that the decrees of the trial court were right as to both appellants, and that such decrees ought to be affirmed and so we order.

Case No. 6819 affirmed.
Case No. 6820 affirmed.