## CLEGG v. METROPOLITAN CASUALTY
## INS. CO. OF NEW YORK.

No. 6856.   Decided November 29, 1946.   (174 P. 2d 616.)

See 26 C. J. S., Depositaries, sec. 9; 43 Am. Jur. 117. See, notes, Public Funds-Statutory designation of depositary, 93 A. L. R. 834; 155 A. L. R. 441. See, also, 42 Am. Jur. 731.

*Arthur E. Moreton* and *Elias L. Day,* both of Salt Lake City, for appellant.

*Ingebretsen, Ray, Rawlings & Christensen,* of Salt Lake City, for respondent.

WADE, Justice.

Plaintiff in his petition for rehearing strenuously urges that our decision in this case upsets a long and well-established rule of contracts and thereby overrules *Salt Lake*

*County* v. *American Surety Co. of New York*, 63 Utah 98, 222 P. 600; and *Beaver County* v. *Home Indemnity Co.*, 88 Utah 1, 52 P. 2d 435. He further pictures the dire results which will flow from this decision to be that when the effect thereof is known no suitable person will seek any public office which involves the custody of public funds.

Counsels' concern for the public welfare is entirely unfounded. The dire results which he anticipates will come, if at all, from our construction of Sec. 4500, Chap. 46, Laws of Utah for 1929, which section was amended in 1933, Sec. 74-1-1, R. S. U. 1933 to provide that any public officer having public funds in his custody may deposit the same with any bank, which meets therein specified requirements,

"provided he * * * takes from such depositary collateral security, or a bond furnished by a surety company qualified to do business in this state *in favor of the entity of which he is such public officer* * * *." (Italics ours.)

They indicate the part of the section which was added by the 1933 amendment. Under this amendment the depository surety bond would be payable direct to the public entity rather than to the officer having such public funds in his custody, either as such officer or otherwise. By so doing the legislature has enacted into law the same effect as our ruling in this case about which plaintiff is so concerned. However, by legislation which took effect at the same time the legislature repealed the entire chapter and established a new system.

But these amendments do not justify us in overruling, without sufficient grounds, long-established rules of law and previous decisions. In any event, we should not, without frankly so stating and giving the reasons therefor, overrule a previous decision. Here we did not acknowledge that we were overruling any previous decision because we did not understand that to be the effect of our decision. We still do not think that this decision is contrary to either of the cases above cited either as to the necessary holding therein or the rationale on which such decisions are based.

The question here decided was not involved in either of the previous cases, and it was not therein discussed, nor is the rationale on which those decisions were based contrary to this decision.

In *Salt Lake County* v. *American Surety Co. of New York,* supra, Salt Lake County brought the action against the surety company on the official bond of the Salt Lake County Treasurer for moneys which he had lost as the result of the failure of the bank in which he had placed them on deposit. That case involved the construction of Sec. 4500, C. L. U. 1917, which was similar to the 1929 amendment in that it authorized any public officer having public funds in his custody to deposit the same with any bank which meets the requirements therein specified,

"provided * * * that he take from such depository collateral security or a good and sufficient surety company bond * * * sufficient in amount to fully protect such funds; * * *."

There was no provision therein such as was provided by the amendment of 1929, supra, to the effect that where such officer has

"kept on deposit any public funds in his custody in a depository in strict compliance with the provisions of this section, he shall not be liable personally or upon his official bond for any public moneys that may be lost by reason of the failure or insolvency of such depository * * *."

In that case we held that under Sec. 4500, C. L. U. 1917, it was not mandatory on the treasurer but merely permissive that he keep the public funds in his custody in a depository mentioned in that section, and therefore he was an insurer of such funds and was absolutely liable for their loss. We further held that the county could sue and collect from the surety on the treasurer's official bond without joining the treasurer, the depositary, the depositary sureties, or without exhausting the securities furnished by the depositary to the treasurer. The questions decided in the instant case were not remotely involved in that case. The only thing in that decision that in any way interests us in

this case is the fact it was held that the treasurer had the option whether he would deposit the funds in a depositary in accordance with the provisions of Sec. 4500, C. L. U. 1917, or whether he would hold them in some other manner.

The National Surety Co. v. Salt Lake County, 8 Cir., 5 F. 2d 34, 36, was an action growing out of the same loss of county funds which was involved in Salt Lake County v. American Surety Co. of New York, supra. It was a contest between the National Surety Company as surety on the depositary bond and the American Surety Company as surety on the treasurer's official bond to determine their respective rights to participate in the proceeds of certain securities furnished the treasurer by the depositary bank and in the dividends payed by the defunct bank, after the county had been paid in full and both sureties had contributed thereto to the full extent of their respective liabilities on such bonds. It was there held that since it was merely permissive and not mandatory that the county treasurer deposit the county funds in some bank and the treasurer was an insurer and was absolutely liable for the loss thereof, and since Sec. 4500 did not require that the depositary bond be made payable directly to the county and it was in fact made payable to the treasurer of the county, therefore, even though "in some aspects the money so deposited is, by the bank, held as a trust fund for the county" still that does not have the "effect to make the county, upon all views, the creditor of the bank. The treasurer is yet the debtor of the county and the bank is the debtor of the treasurer." Thus, it was concluded that although the treasurer, the surety on his official bond, the depositary bank and its surety, were all primarily liable to the county, and it could recover from either or all of them jointly or severally, still as between them their liabilities were not on the same level. That, as between them, the liability of some of these parties was of a more primary nature than the liability of the others. That is to say that if one of these parties was required to pay while another whose liability was of a more primary nature was not,

then the one who paid could recover that amount from the other who did not. In other words although each and all of them are absolutely liable to the county, the official surety having only guaranteed that the treasurer would safely keep the county funds could recover a judgment against the treasurer for the full amount which it was required to pay as a result of the failure of the treasurer. Also, since the treasurer was the debtor of the county and the depositary bank and its surety were the debtors of the treasurer, the libaility of the depositary surety would be more primary than the liability of the official surety. And so as between the American Surety Company as surety on the treasurer's official bond and the National Surety Company as surety on the depositary bond, the former was subrogated to the rights of the county against the assets of the bank and should be paid in full the amount it had been required to pay on behalf of the county treasurer before the latter could participate in the proceeds of the securities or the dividends of the defunct bank. Neither in this or the previous case was there any holding that the treasurer had in any manner violated the provisions of Sec. 4500, C. L. U. 1917 in depositing the money with the defunct bank.

The case of *Beaver County* v. *Home Indemnity Co.*, supra, hereinafter referred to as the Beaver County case, is somewhat similar to the case of *National Surety Co.* v. *Salt Lake County*, supra, hereinafter called the Salt Lake County case, in that it is largely a contest between the surety on the treasurers' official bond and the individual sureties on the depositary bond. There are several differences. In the Salt Lake County case the treasurer had fully complied with the requirements of Sec. 4500, C. L. U. 1917, as it existed then, but still was liable to the county as an insurer for the funds lost. In the Beaver County case the statute had been amended to exempt the treasurer and his official bondsmen from liability for loss of funds by the depositary where he complied strictly with the provisions of Sec. 4500 as amended in 1929, but the treasurer had failed to comply strictly with the provisions of that

section and was still liable for the funds which were lost. In the Salt Lake County case the county had been paid in full and the parties in the controversy had each paid to the full extent of their respective liabilities but in the Beaver County case no one had paid the county.

We held that the county was entitled to a direct judgment against the treasurer and the depositary bank to the full extent of its loss, and also against the surety on the treasurer's official bond, and the individual depositary bondsmen to the full extent of the liability provided for in their respective bonds. But as between these various parties if the surety on the official bond was required to pay he would be subrogated to the rights of the county against the treasurer, and would be entitled to a judgment for the full amount which it was required to pay against the treasurer; that as between the treasurer and the bank and its depositary bondsmen, the liability of the bank was the primary liability of all, since the depositary bond undertook to protect the treasurer against loss by reason of such deposit, in case the treasurer was required to pay he would be subrogated to the rights of the county to that extent against the bank and the depositary bondsmen, and the surety on the treasurer's bond would be subrogated to the rights of the county against the bank and its depositary bondsmen to the extent that it was required to pay.

In both of those cases the treasurer was still in office and entitled to receive and hold the county funds in trust for the county. In the instant case the plaintiff has ceased to be treasurer of the county school board and has no right to receive or hold its funds. The surety on plaintiff's official bond has paid the county school board $14,500 and in turn has obtained a judgment for that amount against plaintiff. The county school board has been paid in full but plaintiff has not paid anything either to the county school board or to the surety on his official bond. The surety on plaintiff's official bond, having paid to the county school board, is subrogated to the county's right against the defendant as surety on the depositary bond, and if the statute of limi-

tations has not run can recover the money here in question from the defendant.

Under the above cases it must be conceded that had the plaintiff paid to the county or to the surety on his official bond, the amount he is here asking he would be subrogated to the rights of the county against the defendant as the surety on the depositary bond and would be entitled to recover in this action. But his right to subrogation only occurs when he pays the debt not when he becomes liable therefor or when a judgment is awarded against him. The above cases were dealing only with the right of subrogation, and since the plaintiff has not paid he does not bring himself within those decisions. No case has been cited to the contrary.

But it is argued that even though the plaintiff is not able to succeed on the doctrine of subrogation, the above cases hold that the defendant, as surety on the depositary bond in which the plaintiff was the obligee, is the debtor of the plaintiff and therefore is liable to him for the amount asked for in this action. It is true that these cases do hold that since the treasurer is the obligee in the depositary bond the surety on that bond is his debtor. But they do not hold that such debtor relationship was a personal debtor relationship to him as a private individual as distinguished from him in his official capacity as the treasurer of the county school board. Both of those cases clearly point out that such debtor relationship was to him as the treasurer to hold the funds in trust for the county. The Beaver County case definitely points out and necessarily holds that the county as beneficiary of such trust was entitled to a judgment directly against the depositary bondsmen and did not have to sue through the treasurer. In this regard we there said on page 45 of 88 Utah, on page 454 of 52 P. 2d:

"* * * the county could come against the official surety as well as against the depositary sureties who were security for its funds wrongly deposited in the bank. The fact that it had four sources of recoupment for public moneys, to wit, the treasurer, the official surety of the treasurer, the bank, and the depositary sureties, does not mean that the treasurer, one of its sources, is not also a creditor of the bank.

The treasurer, being a creditor of the bank, could call upon its sureties to pay as they contracted. They contracted to pay the *treasurer of Beaver county* if the bank did not pay. That means they *contracted to pay Farnsworth as treasurer.* Contracts were meant to fulfill. If the depositary sureties do what they in law and good conscience should do, the treasurer will be in receipt of $25,000, which he must turn over to the county  *  *  *."

Since the plaintiff in the instant case is no longer the treasurer of the county school board he is no longer entitled to receive or have the custody of its funds. He is also no longer the obligee on the depositary bond such obligee being the "Treasurer, Tooele County School Board." Therefore the surety on the depositary bond is no longer his debtor and there is no contract by defendant to pay plaintiff.

As pointed out in our original opinion, there is nothing in Sec. 4500, Chap. 46, Laws of Utah for 1929, or in the wording of this bond which indicates an intention on the part of the legislature to require, or on the part of the parties to this bond to contract, to the effect that the surety on the depositary bond protect the treasurer against personal liability to pay the county or his official surety, where he has not actually paid or been out of pocket any money to any one. The petition for a rehearing is therefore denied.

McDONOUGH and WOLFE, JJ., concur.

LARSON, Chief Justice.

I dissent. I think a rehearing should be granted.

PRATT, J., not participating.