# Richmond.

## COLEMAN V. SANDS.

### April 30th, 1891.

1. MANDAMUS—*Voters—Registration—Appeal.*—Where, under Code, § 83, a voter appeals from refusal of registrar to register him, the answer of registrar that voter did not offer to qualify as to his right to vote, and that he is not entitled to vote, *held,* no defence to application for *mandamus* to compel registrar to transmit to the court the ground relied on by appellant, and the reasons of the refusal.
2. REGISTRAR—*Resignation—Acceptance.*—Until resignation of a registrar has been accepted, his resignation is inoperative and he remains in office.

Application for *mandamus* filed in the original jurisdiction of this court by George Coleman against William H. Sands, alleged registrar of Shoemaker's district in Henrico county. Opinion states the case.

*Edmund Waddill, Jr.,* and *W. H. Beveridge,* for the petitioner.

*Sands, Pollard & Sands* and *Meredith & Cocke,* for the respondent.

LEWIS, P., delivered the opinion of the court.

The petition alleges that the petitioner is a legally qualified voter in the said election district, and that the defendant, Sands, is the registrar for the same district; that on the second day of April, 1891, the petitioner presented himself to the de-

fendant, as registrar, and requested to be registered as a voter
in said district; that he then stated to the defendant that ·he
was a duly qualified voter, and entitled to be registered as
such in said district, and offered to make a full statement
under oath of all the facts required by law to prove that he
was entitled to be registered; that the defendant refused to
register petitioner, whereupon he, desiring an appeal, applied
to the defendant to transmit a written statement to the judge
of the county court of Henrico county of the ground relied on
by the petitioner, and the reasons of the defendant for his
action; that petitioner thereupon appealed to the county judge,
and presented his petition, setting forth all the facts, and of-
fered to prove every allegation made by him that was neces-
sary to be proved to show his right to be registered; that the
defendant appeared by counsel, and, instead of filing the said
written statement, he entered a demurrer to the petition, and
declined to file said statement, or to give any reason for his
failure to do so.

The petition then goes on to further aver that the judge
refused to consider the appeal, on the ground that he had not
before him the written statement aforesaid, as required by sec-
tion 83 of the Code, and because he had no power to compel
such statement to be furnished.   And the prayer of the petition
is that a *mandamus* be awarded by this court to compel the
defendant to transmit to the judge of the county court the
written statement aforesaid, pursuant to the statute in such
case made and provided.

To this petition the defendant demurred and also answered.

In his answer he sets up two grounds of defence, viz: (1)
that on the 2d of April, 1891, he was not the registrar for the
said election district; and (2) that the petitioner did not on the
said second day of April, or at any time thereafter, offer to
qualify as to his right to vote, and, moreover, that he is not
entitled to be registered in the said county.

The averment of the answer as to the first point is as fol-

lows: "Your respondent states that some time in the month of March, 1891, he qualified as registrar of Shoemaker's precinct, in Henrico county, under an appointment of the electoral board of said county, and that after holding the office for a short time, he, on the morning of the second of April, 1891, resigned the same, and herewith files the acknowledgment of the receipt of said resignation by the clerk of the electoral board."

To this answer the petitioner demurred. He also filed a general replication, and upon the issue thus joined evidence has been taken. Inasmuch, however, as the questions in controversy may be properly determined on the demurrer, we will consider the case upon the demurrer alone, and in doing so, we will consider the points relied on in the answer in the inverse order in which they have just been stated.

The second point, namely, that the defendant did not offer to qualify as to his right to vote, and that he is not entitled to be registered, is clearly not a sufficient answer to the case made by the petition. The question on this branch of the case is, not whether the petitioner offered to swear that he was a qualified voter, or whether he is or is not entitled to be registered, but whether the requisitions of the statute in such a case have been complied with. Section 83 of the Code provides that "if any person shall offer to be registered and shall be rejected by the registrar, he may take an appeal to the court of his county or corporation, or to the judge thereof in vacation;" and by the same section it is made the duty of the registrar, on the application of any person so desiring an appeal, to "transmit to the court having jurisdiction over the said election district, or to the judge thereof, a written statement of the ground relied on by the appellant and the reasons of the registrar for his action."

There is no averment in the answer that an opportunity was given the petitioner to take the oath required by section 75 of the Code of every person before being registered, and if

such opportunity had been given, and the petitioner had de-
clined to take the oath, that would be no just ground for the
refusal of the defendant, if, as the petitioner alleges, he was the
registrar for Shoemaker's election district at the time, to trans-
mit the reasons for his action as required by section 83, above
alluded to.   When such a statement as is required by that
section is transmitted, it is for the court or judge, as the case
may be, to determine whether or not the appellant is entitled
to be registered.   But no such question, we repeat, is presented
for our consideration.   The object of this proceeding is to
compel the defendant to transmit a statement to the county
judge, giving the reasons for his action in refusing to register
the petitioner, to enable *the judge* to decide whether that action
was right or not.   Without the required statement that ques-
tion cannot be determined, and the proper tribunal to deter-
mine it is the county court in term time, or the judge thereof
in vacation.

Then, the next, and only other real, question is, Was the
defendant in office when the application to him was made by
the petitioner? or in other words, had his resignation at that
time become complete?

In his answer he states that he resigned on the 2d of April,
1891.   But he does not stop there.   He goes on to aver how,
as he supposes, his resignation was effected.   And the aver-
ment is that on that day he tendered his resignation, the re-
ceipt of which was acknowledged in writing by the clerk of the
electoral board.   It is not stated, however, that the resignation
has ever been acted on by the board, either by formally ac-
cepting it, or by appointing a successor.   He relies simply on
the tender of the resignation and the acknowledgment of its
receipt.   The question, therefore, is, Did *that* amount to a depo-
sition of his office as registrar?   After a careful consideration
of the case we are of opinion that it did not.

At the present day, in this country, when, as is commonly
said, the man oftener seeks the office than the office the man,

especially if it be an office of honor and emolument, to question the proposition that a person in office may resign at pleasure, seems, at first blush, perhaps, a little strange, if not absurd. But be that as it may, in the absence of any controlling statute on the subject, and we are aware of none, such is not the law of this case. The resignation of a public local office is by no means, in all cases, a matter of right. Such an office is ordinarily held, not at the will of either party, but at the will of both. And a registrar is not only a public officer, but one upon whom, in the administration of the government, most important and essential duties are imposed. He is required, moreover, to take the same oath of office as is prescribed for officers of the State generally. Code, sec. 76.

At common law to refuse to serve in a municipal office connected with local administration, when elected or appointed thereto, was a punishable offence, of which numerous illustrations are to be found in the books. Thus, in *Rex* v. *Burder*, 4 T. R., 778, the defendant was indicted for that having been appointed to the office of overseer of the poor, he unlawfully refused to execute the office, and the indictment was sustained. So in *Rex* v. *Lone*, 2 Stra., 920, which was an indictment for not taking the office of constable, it was moved, after verdict, in arrest of judgment that the offence charged was not indictable. But the motion was overruled, and the conviction held good. The same principle was recognized in *Rex* v. *Bower*, 1 Barn. & C., 585. That was an application for a *mandamus* to compel the defendant to take upon himself the office of common councilman in the borough of Lancaster, and the defence was that by a by-law persons refusing to fill the office were subject to a certain fine, which the defendant had paid. But the return was held insufficient, as it did not state that the fine was to be in lieu of service. The court said: "It is an offence at common law to refuse to serve an office when duly executed. The by-law in this case does not say that the party paying the fine shall be exempt from serving

the office, or that the fine is to be in lieu of service. As that is not declared in the by-law, we cannot say that the payment shall have any such operation." A peremptory *mandamus* was accordingly awarded.

Whether, in view of the statute, now carried into section sixty-nine of the Code, which empowers the electoral board, and makes it its duty, to declare vacant and to fill the office of any registrar who fails to qualify within thirty days after his appointment, an indictment would be sustainable in Virginia for a refusal to take the office of registrar, it is not necessary for the purposes of the present case to inquire; for here there has been no refusal to qualify, and the question is, whether the defendant has legally resigned. In other words, the question is narrowed down by the record to this: Can a registrar resign at pleasure without any acceptance, express or implied, of the registration by the proper authority, to-wit, the electoral board of his city or county?

That an office is vacated by resignation no one will deny. But the question arises, what constitutes a resignation—*i. e.*, a complete resignation?

Bouvier in his Law Dictionary, after giving the definition of the term "resignation," adds these words: "As offices are held at the will of both parties, if the resignation of an officer be not accepted, he remains in office;" and for this he cites the case of *Hoke* v. *Henderson*, 4 Dev. (N. C.), 1. In that case the opinion, which is a very able one, was delivered by Chief Justice Ruffin, who, among other things, said:

".An officer may certainly resign, but without acceptance his resignation is nothing, and he remains in office. It is not true that an office is held at the will of either party. It is held at the will of both. Generally resignations are accepted, and that has been so much a matter of course with respect to lucrative-offices as to have grown into common notion that to resign is a matter of right. But it is otherwise. The pub-, lic has a right to the services of all the citizens, and may de-

mand them in all civil departments as well as in the military.
Hence there are on our statute-book several acts to compel men
to serve in offices. Every man is obliged, upon a general prin-
ciple, after entering upon office, to discharge the duties of it
while he continues in office, and he cannot lay it down until·
the public, or those to whom the authority is confided, are
satisfied that the office is in a proper state to be left, and the
officer is discharged. The obligation is therefore strictly mu-
tual, and neither party can forcibly violate it."

Judge Dillon, speaking of the resignation of municipal
officers, lays down the same doctrine. He says: "An office
must be resigned either expressly, or by implication. If the
charter 'prescribes the mode in which the resignation is to be
made, that mode should of course be complied with. Accep-
tance by the corporation is, at common law, necessary to a
consummation of the resignation, and until acceptance by
proper authority, that tender or offer to resign is revocable."
1 Dill. Munc. Corp., sec. 163.

We find this subject very fully and luminously discussed
by Mr. Justice Bradley, in delivering the opinion of the court,
in *Edwards* v. *United States*, 103 U. S., 471. That was an ap-
plication for a *mandamus* against Edwards, as a township
supervisor, in the State of Michigan, to have a judgment, pre-
viously recovered by the relator against the township, audited
and paid. The defendant answered that he had resigned his
office in a written communication addressed to the township
board, a copy of which he exhibited with his answer. It did
not appear, however, that the resignation had been acted on,
and it was therefore held not complete. In the course of the
opinion it was said:

" As civil officers are appointed for the purpose of exercising
the functions, and carrying on the operations of government,
and maintaining public order, a political organization would
seem to be imperfect which should allow the depositories of
its power to throw off their responsibilities at their own pleas-

ure.   This certainly was not the doctrine of the common law.
In England a person elected to a municipal office was obliged
to accept it and perform its duties, and he subjected himself
to a penalty by refusal.   An office was regarded as a burden
which the appointee was bound, in the interest of the commu-
nity and of good government, to bear.   And from this it fol-
lowed of course that, after an office was conferred and assumed,
it could not be laid down without the consent of the appoint-
ing power.   This was required in order that the public inter-
ests might suffer no inconvenience for the want of public ser-
vants to execute the laws.   This acceptance," it was added,
" may be manifested either by a formal declaration, or by the
appointment of a successor."

The court then went into an examination of the Michigan
statutes, including one which provides that every office shall
become vacant by " resignation," and continued as follows: .
" But it is nowhere declared when a resignation shall become
complete.   This is left to be determined upon general princi-
ple.   And in view of the manifest spirit and interest of the
laws above cited, it seems to us apparent that the common law
requirement, namely, that a resignation must be accepted
before it can be regarded as complete, was not intended to be
abrogated.   To hold it to be abrogated would enable every
office-holder to throw off his official character at will, and leave
the community unprotected.   We do not think that this was
the intent of the law."

Many other authorities to the same effect might be cited,
but we deem a citation of them unnecessary.

On the other hand, the defendant relies upon several cases,
the first of which is *Amy* v. *Watertown*, 130 U. S., 301.   But
that case, as the court said in its opinion, is clearly distin-
guishable from the *Edwards Case* and other cases of that class.
That was an action against the city of Watertown, and the
principal question was whether process in the action had been
duly served.   The charter of the city required service in such

cases to be had on the mayor, and also provided that "the resignation of the mayor shall be in writing, directed to the common council or city clerk, and filed with the clerk, and *shall take effect at the time of filing the same."* The mayor resigned, before the commencement of the action, by complying with this provision, and it was held that his resignation became complete upon being filed, and consequently that there had been no valid service of process. It would be an idle waste of time to say more to show that that case is no authority for the position taken by the defendant in the present case.

The next case is *United States* v. *Wright*, 1 McLean, 509, which was a *nisi prius* decision of Mr. Justice McLean, and in which the resignation of a United States revenue officer was a subject of consideration. In the opinion it was said : " There can be no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office." This is certainly a very broad statement of the doctrine, and, if correct, as a universal proposition, would be decisive of the present case. But of that case we need only say (1) that it was virtually overruled by the supreme court in the *Edwards Case;* and (2) that the doctrine there announced has no application to officers who are chosen to carry on local government. Such was the comment upon the case by the supreme court of New Jersey in *State* v. *Ferguson*, 31 N. J. L., 107, which remark was quoted with approval in the *Edwards Case.*

And the same comment may be made with equal propriety upon *Bunting* v. *Willis*, 27 Gratt., 144, which was decided before the *Edwards Case*, and in which Moncure, P., referring to the resignation by the plaintiff in error of the office of U. S. deputy collector of customs, observed, in language very similar to that of Mr. Justice McLean in the *Wright Case*, that " he had a right to resign his federal office, and that such right does not depend upon the consent or acceptance of the government." It is observable, moreover, that notwithstanding this

broad language, the decision of the case, if we correctly under-
stand it, proceeded on the ground that not until acceptance
did the resignation become complete.

That was the case of the election of a person, holding a fede-
ral office at the time, to the office of sheriff for the term com-
mencing on the 1st of July then next ensuing. He tendered
his resignation of the former office on the 19th of June, to take
effect on the 30th. On the first day of July he performed an
official act as deputy collector, by completing the clearance of
a vessel, and on the next day he was relieved and the office
turned over to another, which was the first manifestation of
an acceptance of the resignation ; and this court held that not
until then did he cease to hold the office. Although the resig-
nation was tendered to take effect on the 30th of June, said
the court, " it was not *accepted* until after that time." It was
consequently held that by continuing in the federal office after
the 1st of July, the office of sheriff was vacated.

It is obvious, to say the least, that the case is not an au-
thority against the views we have expressed.

In *Pace* v. *People*, 50 Ill., also relied upon, which was the
case of the resignation of a school superintendent, there was,
in fact, an acceptance of the resignation, and therefore, as
the court held, the same became complete upon its being
tendered.

In *People* v. *Porter*, 6 Cal., 26, it was decided by a divided
court, and chiefly on the authority of the case in 1 McLean,
that the resignation of an office is effectual without acceptance,
and following those cases is *State* v. *Fitts*, 49 Ala., 402. To the
same effect, also, is *State* v. *Hauss*, 43 Ind., 105. We have ex-
amined these cases, and are unable to yield our assent to them.
They do not, in our opinion, state correctly the true principle
of the common law, and are, moreover, in conflict with the
great weight of authority, as we think we have already shown.

Our conclusion, therefore, is that there has not been such a
complete resignation on the part of the defendant as to amount

to a deposition of his office of registrar, and that a *mandamus* must be awarded as prayed for in the petition.

LACY, J., dissenting, said:

This is upon an application by George Coleman, the petitioner, for the peremptory writ of *mandamus* to compel W. H. Sands, the respondent, to transmit to the county court of Henrico a written statement of the grounds relied on by the said petitioner to register as a voter, alleging that the respondent is a registrar of voters in the registration district in question, and that said certificate is required by law.

The respondent answers that he is not now, and was not at the time application was made to him for said certificate, a registrar of voters in said district; that he had held such office, but had resigned the same unreservedly before the application was made to him for the certificate in question, and that petitioner was informed of the fact that he had resigned the said office, and was no longer authorized by law to discharge the functions of said office. That he was appointed by the electoral board of the county as prescribed by law, and had delivered his resignation in writing to the said appointing power through its clerk.

It is set forth therein also that whereas by law it is provided that each registrar shall annually, on the second Tuesday in May, at his voting place, proceed to register the names of all qualified voters within his election district, not previously registered, who shall apply to be registered, commencing at sunrise and ending at sunset (sec. 78, Code of Virginia), and although he had notified all persons manifesting an interest in the subject that on that day all would be added to the list who were entitled to be; that yet, as the law authorized a registrar to register applicants entitled to vote at any time previous to regular elections, numerous persons applied to him at his house at night in such manner and with such in-

sistence that he had been unwilling to hold the said office, and had unconditionally resigned.

To this answer the petitioner demurred, and upon consideration of the issue thus raised, I am of opinion that the answer is sufficient in law, and is indeed a complete answer to the petition; and that the same should be dismissed and the writ of *mandamus* denied, because the respondent is not a registrar, but is out of office, and cannot lawfully perform any duty appertaining to it.

In Virginia an unconditioned resignation of an office is a termination of an office *proprio vigore.* I find all the books agreed upon this proposition, and I have not found anything to the contrary. Mr. Minor, in his Institutes, Vol. 2, p. 26, says:

"*The grounds on which offices may be determined.*

The circumstances which may lead to offices being determined, may be enumerated as follows:

(1.) *Resignation,* expiration of term, and removal from office by competent authority."

And again he says on the following page (27):

"Mode of *effecting the removal from office* of one on the grounds above named.

*Resignation, expiration of term, and removal by competent authority, of course terminated the office proprio vigore;* but in the other cases of delinquency, the office is not determined *ipso facto* by the occurrence of the cause. There must be a judgment of a motion," &c.

This must be so under our constitution and laws, which everywhere recognize and provide for vacancies in office created by resignation or otherwise; and Mr. Minor is clearly right in this view, because if an incumbent has resigned beyond recall, he cannot again rehabilitate himself with the office; and when the resignation is accepted, which it may be, either expressly

or by implication, the resignation is effective, if peremptory, from its date.

This language of Mr. Minor has been adopted by this court more than once, and is by the decisions of this court the settled law upon this subject in this State. In the case in this court known as the Bland & Giles Co., Judge Carr, reported in 33 Gratt., it was said in the opinion of this court: "An office is terminated *proprio vigore* by resignation, expiration of term, and removal by competent authority. But in other cases the office is not determined *ipso facto* by the occurrence of the cause. There must be a judgment of a motion," &c. Citing 2 Min. Inst., p. 22, and authorities there cited, one of which is Tuck. Com., Vol. —, p. 11, where the same doctrine is found.

Judge Tucker says: "It remains to remark that offices may be terminated by resignation, or the acceptance of an incompatible office, even though it be inferior (2 T. R. 81, Dougl., 398,) or by removal," &c. Adding, "offices may be forfeited by misconduct or neglect, &c., but this can only be by the judgment of a court, I apprehend, in Virginia. * * * * I am not aware of any decision as to the necessity of a judgment of a motion when an office has been forfeited by removal or an incompatible office."

It will be observed that the learned commentator seems to regard the case as Mr. Minor, as obviously a matter of course. Again, in the case of *Johnson* v. *Mann, Judge, and Couch, Treasurer*, reported in 77th Va. Rep., 270, Judge Richardson, speaking of a case of expiration of term, says, in delivering the unanimous opinion of this court, all the judges, as the court is now constituted, concurring.

"Again, in the Bland and Giles county case, 33 Gratt., 450, Judge Christian, in delivering the opinion of this court, in speaking of the tenure of office of a county judge, says:

'An office is terminated *proprio vigore* by resignation, expiration of term, and removal by competent authority.'"

And again, in the same case in construing a section of the Pennsylvania Constitution, which is as follows: "They (certain officers, including the one then in question) shall hold their offices for three years, if they shall so long behave themselves well, *and until their successor shall be duly qualified,*" it is said, "The obvious meaning of this provision is, that such officers cannot hold for less than three years if they so long behave well, *and choose not to resign,* although on the happening of certain contingencies, they *may* hold for a longer period."

Upon the language relied on by the petitioner in the laws, that "this officer shall hold for a stated term and until his successor is qualified," refers, I think, to a definition of term and tenue, where there had been no vacancy created in the office except by expiration of terms, the end and object is enabling only.

This language has been under review here in several cases. In the case of *Johnson* v. *Mann, Judge, supra,* and in the case of *Kilpatrick* v. *Smith,* 77 Va. Rep., p. 358, Judge Richardson says: "The twenty-fifth section of article six of the Constitution is in its nature enabling. It empowers judges and all other officers elected or appointed, to continue to discharge the duties of their offices *after their terms* of service have expired, until their successors have qualified no longer." * * * "The clause in question, in our Constitution, does not extend the term, *but simply enables* the incumbent to hold over until his successor, whether elected or appointed, is chosen, in the way prescribed by law."

And I think this language cannot be correctly used to do more than to *enable* an officer to discharge the duties when his term has ended by expiration of the time for which he was chosen. It is not intended to compel a citizen to hold an office against his will, and after he has chosen to resign. It was intended to enable the incumbent to hold for that time (to

use the language of the unanimous opinion of this court cited above), "unless he choose sooner to resign."

There are other decisions of this court to the same effect on both propositions, but it is not necessary to further cite them.

I do not concur in the argument that the authority granted by secs. 67, 69, and 84, of the Code of Virginia, are intended to and does compel an officer to hold for the full term and afterwards, whether he wishes to or not. They mean, as this court has said, "*choose sooner to resign;*" and he may resign during the term if he chooses to do so, and thus create a vacancy.

But the argument is that the supreme court of the United States has held in certain cases, erroneously cited as *Badger* v. *United States,* and *Salamanka* v. *United States,* that an officer cannot resign when he chooses, and thus throw off his responsibilities to the public, &c., &c.; and especially that Justice Bradley has said so in *Edwards* v. *United States,* Vol. 103, U. S. Rep., 471.

Without pausing to myself explain or construe these cases, I will leave that where it is so well done by that learned justice himself in the later case of *Amy* v. *Watertown,* 130 U. S. R., 315, 319, merely remarking that in the case of *Edwards* v. *United States, supra,* the justice says:

"In this country, where offices of emolument and honor are commonly more eagerly sought after than shunned, a contrary doctrine (that is, contrary to the common law,) with regard to such offices, and, in some States, with regard to offices in general, may have obtained; but we must presume that the common law rule prevails unless the contrary is shown;" and he goes on to show that in that State, Michigan, the common law rule has been adopted by statute, and cites a law of that State where, if an officer declines to accept an office, and does not qualify within ten days, he is fined $10.

Of course when acceptance of an office is made compulsory

by the penal laws, and resignation is restricted by law, the question is distinguishable from this.

But I have said that I would cite this learned justice in *Amy* v. *Watertown*, decided in 1889. In that case, speaking of an officer who had resigned, he said: "There was no mayor in office at the time. The last mayor had resigned, and his resignation had taken effect. Service on him was of no more avail than service on an entire stranger."

The case is different from those in which we have held that a resignation of an officer did not take effect *until it was accepted*, or *until another was appointed*. In *these cases either* the common law prevailed, or the local law provided for the case, and prevented a vacancy. Such were the cases of *Badger* v. *Bolles*, 93 U. S., 599, and *Edwards* v. *United States*, 103 U S. R., 471, and *Salamanka* v. *Wilson*, 109 U. S., 627.

" In the present case," further says the learned justice, "*it is true* the consolidated charter of the city of Watertown provides that 'all elective officers, except aldermen, shall, unless otherwise provided, hold their respective offices for one year, and until their successors are elected and qualified.' But that provision has respect to ordinary cases. It cannot apply in case of death, and *does not* apply in case of resignation;" and goes on to show that this resignation was to take effect by the State law from the time it was filed.

And it appears that this case, like the others, proceeds upon a consideration of the law of the State where the case arose, in accordance with the act of Congress of June 1st, 1872 (Rev. Stat., § 914), since the passage of which act the practice and pleadings and forms and modes of proceedings must conform to the State law *and the practice of the State courts.*

In this case, therefore, if the supreme court of the United States were considering this question, the said court, in view of the foregoing decisions of this court, would, I think, decide this question as I have urged that it should be decided, and I do not find anything in that court to the contrary.

We have been referred to numerous other authorities by the learned counsel for the respondent. Among them the case in this court of *Bunting* v. *Willis, Judge*, 27 Gratt., where Judge Moncure, speaking for the court, said, as to an officer who had resigned a Federal office in Virginia, "that he had a right to resign his Federal office, and that such right does not depend upon the consent or acceptance of the government or its agents, seems to be well settled." That after such a resignation becomes complete it cannot be withdrawn by the officer, even with the consent of the government, seems also to be settled, though he may receive a new appointment, which may, perhaps, be given to him in the form of a withdrawal by consent of his resignation of his former office.

Further citations are not necessary, I think; it is clear to me that Mr. Sands, the registrar, is out of office, and is no longer capable or able to do the act required of him, and that the writ should be denied.

RICHARDSON, J., concurred with LACY, J.

MANDAMUS AWARDED.