## TOOELE COUNTY v. DE LA MARE et al.

No. 5308.   Decided July 10, 1936.   (59 P. [2d] 1155.)

Rehearing denied October 14, 1936.

*A. E. Moreton* and *H. L. Mulliner*, both of Salt Lake City, for appellants.

*Harley W. Gustin*, of Salt Lake City, *J. T. Pence*, of Big Piney, Wyo., and *C. E. Baker*, of Tooele, for respondent.

ELIAS HANSEN, Chief Justice.

Plaintiff secured a judgment against defendant Isabel De La Mare for the sum of $58,053.35 and against the defendant National Surety Company in the sum of $40,000. Defendants appeal. The controversy resulting in the judgment grew out of the failure of the Tooele County State Bank, where defendant Miss De La Mare, as county treasurer of Tooele county, Utah, had funds of the county on deposit. The defendant National Surety Company was the

surety on the official bond of Miss De La Mare. The surety bond was for the sum of $40,000. This cause has heretofore been argued, and by a divided court an opinion rendered affirming the judgment of the trial court. *Tooele County* v. *Isabel De La Mare* and *National Surety Company*, 89 Utah 23, 39 P. (2d) 1051. Upon a petition filed by defendants a rehearing was granted. The cause has been reargued and resubmitted. After a re-examination of the question presented for review, we have reached a conclusion at variance with the former opinion. It therefore becomes necessary to recall the former opinion and substitute another in lieu thereof. The principal attack made upon the judgment appealed from by the assignments of error is that various findings of fact and the judgment are without support in the evidence. There is no substantial conflict in the evidence which establishes the following facts: Isabel De La Mare was the treasurer of Tooele county, Utah, during the ten years immediately preceding January 5, 1931. At a general election held in November, 1930, Mrs. Annie Campbell was elected to that office. A certificate of election was issued to her by the county clerk. At noon on Monday, January 5, 1931, Annie Campbell together with the other newly-elected officers of Tooele county, took their oaths of office. Mrs. Campbell did not sign the oath. After she took her oath of office, Mrs. Campbell submitted to the board of county commissioners a written appointment of defendant Isabel De La Mare as deputy county treasurer at a salary of $100 per month, to serve up to and including January 16, 1931. The appointment of Miss De La Mare as deputy was on that date, January 5, 1931, approved by the county commissioners. Mrs. Campbell had not filed her bond at the time she took her oath of office. The minutes of a meeting of the board of county commissioners held January 5, 1931, show that:

"At 12 o'clock, noon, the following officers were sworn in respectively, as follows: Fred Shelton, Commissioner, Richard Jeffries, Commissioner, C. E. Baker, County Attorney, O. A. Evans, Sheriff; Mrs.

Annie Campbell, Treasurer; Miss Millie Shields, County Recorder; D. A. Lindsay, Justice of the Peace; R. Sterling Halliday, County Assessor; the oath being administered by County Clerk, Fred Bryan, who was, in turn, sworn by County Attorney C. E. Baker. The County Clerk having advised the Board that he had the bond for the county officers, except Mrs. Annie Campbell, which bond, he was advised by County Attorney Baker, would be filed today."

After Mrs. Campbell took her oath of office and Miss De La Mare was appointed and approved as deputy treasurer, they went to the Tooele County State Bank where Miss De La Mare had on deposit funds belonging to the county. Miss De La Mare took with her to the bank all of the money which she had at the office and deposited the same to the account of the county. The account of the county at the bank was then transferred from Miss De La Mare, as treasurer, to Mrs. Annie Campbell, as treasurer. Mrs. Campbell signed a card which was left at the bank so that her signature could be identified. She then drew a check against the county funds for the sum of $25 which she took with her to the county treasurer's office for use as petty cash. Prior to the transfer of the account at the bank, the firm of Beesley & Reeves, accountants, were employed by the county commissioners to audit the accounts of Miss De La Mare. They also directed Miss De La Mare as to how to make the transfer of the bank account to Mrs. Campbell. On the same date that the account at the bank was transferred, Miss De La Mare delivered the keys to the office to Mrs. Campbell, gave her the combination to the safe, and turned the management of the office generally over to Mrs. Campbell, who continued in control of the office until January 16, 1931, when Miss De La Mare ceased to act as deputy treasurer. On January 5, 1931, when the account of Tooele county was transferred there was on deposit to the credit of the county the sum of $76,297.73. Between January 5 and January 14, 1931, Mrs. Campbell, as county treasurer, received and deposited to the credit of the county the sum of $6,325.59. During that same period the county auditor and Mrs. Campbell, as treasurer,

drew against the account checks and warrants in the total sum of $18,119.60, which was paid by the bank. The bank closed on January 14, 1931, at which time there was on its books a credit to the county, Annie Campbell, treasurer, the sum of $64,503.72. After the bank closed and during the course of its liquidation, and prior to the trial of this cause in the court below, the sum of $6,450.37 was paid by the bank commissioner to the county, leaving a balance owing to the county by the bank of $58,053.35. At the time the account was transferred from Miss De La Mare, as treasurer, to Mrs. Campbell, as treasurer, the former held as security for the payment of the deposit at the bank 60 shares of the 7 per cent preferred stock of the Utah Power & Light Company of the par value of $6,000; 50 shares of the stock of the Amalgamated Sugar Company of the par value of $5,000; 710 shares of the Consolidated Wagon & Machine Company stock of the par value of $12,000; $3,800 par value of Salt Lake Eagle bonds, and $22,500 of Blaine County Investment Company bonds. The record is silent as to the market value of these securities and as to what became of them. Miss De La Mare held no other securities for the payment of the money of the county on deposit at the Tooele County State Bank. The minutes of a meeting of the board of county commissioners held on March 3, 1931, shows that a resolution was passed wherein it is recited that Isabel De La Mare was elected for a 4-year term beginning January 3, 1927, and until her successor was duly elected or appointed and qualified; that she filed an official bond; that she continued as the duly elected, qualified, and acting treasurer until January 16, 1931, at which time she abandoned the office and refused to perform her duties; and that Annie Campbell was elected as treasurer, but failed to file a bond and to enter upon the duties of said office as successor of said Isabel De La Mare, or otherwise. At that meeting Phares Haynes was appointed treasurer. He took and subscribed to the official oath of office and filed his official bond, but up to the time of the trial of this cause his bond

had not been approved. That part of the resolution which recited the election of Miss De La Mare, her continuing in office until January 16, 1931, her abandoning the office and refusing to perform her duties, and the failure of Mrs. Campbell to file a bond, was objected to. The objection was by the court overruled and an exception taken. That ruling is one of the errors relied upon by appellants for reversal of the judgment appealed from.

The ultimate question to be determined is: Does the evidence thus summarized support the judgment under review? Appellants argue at some length that Miss De La Mare's term of office expired on January 5, 1931, and ■ that she was without authority to hold over beyond that term. Our attention is called to section 9, article 4, of the Constitution of Utah, which provides that:

"The terms of all officers elected at any general election, shall commence on the first Monday in January next following the date of their election."

We also have a statute, Laws of Utah 1921, c. 39 (now R. S. Utah 1933, 19-13-6) which, quoting from the 1921 statutes, provides that:

"The elective county and precinct officers, except otherwise provided for in this title, * * * shall be elected at a general election to be held in November, 1922, and every four years thereafter, unless otherwise provided, and shall take office at twelve o'clock meridian, on the first Monday in January next following the date of their election. * * * All officers elected under the provisions of this title shall hold office until their successors are elected or appointed and qualified."

It is appellants' contention that the quoted statute contravenes the quoted constitutional provisions. Cases construing constitutional and statutory provisions somewhat similar to ours lend some support to appellants' contention. We, however, do not deem it necessary to review the authorities bearing upon that phase of the case in hand because the question thus raised by appellants is set at rest against their contention by the law announced in the case of *State ex rel.*

*Stain* v. *Christensen*, 84 Utah 185, 35 P. (2d) 775. While an officer may hold over until a successor is elected and qualified, it by no means follows that an officer is required to hold over. The right of an officer to resign is well recognized. *Gates* v. *Delaware County*, 12 Iowa, 405; *State* v. *Dart*, 57 Minn. 261, 59 N. W. 190; *Van Orsdall* v. *Hazard*, 3 Hill (N. Y.) 243; *Bunting* v. *Willis*, 27 Grat. (68 Va.) 144, 21 Am. Rep. 338; *Roberts* v. *Paul*, 50 W. Va. 528, 40 S. E. 470.

According to some authorities the right to relinquish an office is absolute and effective even though not accepted by the proper officers. *State* v. *Fitts*, 49 Ala. 402; *People* v. *Porter*, 6 Cal. 26; *Meeker* v. *Reed*, 70 Cal. App. 119, 232 P. 760; *Gates* v. *Delaware County*, supra; *State* v. *Lincoln*, 4 Neb. 260; *State* v. *Clarke*, 3 Nev. 566. The great weight of authority, however, is to the effect that a resignation is not effective until it is accepted by the proper authorities. *Thompson* v. *United States*, 103 U. S. 480, 26 L. Ed. 521; *Edwards* v. *United States*, 103 U. S. 471, 26 L. Ed. 314; *Badger* v. *United States*, 93 U. S. 599, 23 L. Ed. 991; *People* v. *Williams*, 145 Ill. 573, 33 N. E. 849, 24 L. R. A. 492, 36 Am. St. Rep. 514; *State* v. *Huff*, 172 Ind. 1, 87 N. E. 141, 139 Am. St. Rep. 355; *State* v. *Council Grove Board of Education*, 108 Kan. 101, 193 P. 1074; *Patrick* v. *Hagins*, 41 S. W. 31, 19 Ky. Law Rep. 482; *Clark* v. *Detroit Board of Education*, 112 Mich. 656, 71 N. W. 177; *Fryer* v. *Norton*, 67 N. J. Law, 537, 538, 52 A. 476; *Van Orsdall* v. *Hazard*, 3 Hill (N. Y.) 243; *State* v. *Cleveland Dist. Board of Education*, 23 Ohio Cir. Ct. R. (N. S.) 98; *Commonwealth* v. *Hess*, 2 Pa. Dist. & Co. R. 530; *State* v. *Stickley*, 80 S. C. 64, 61 S. E. 211, 128 Am. St. Rep. 855, 15 Ann. Cas. 136; *State* v. *Bush*, 141 Tenn. 229, 208 S. W. 607; *Coleman* v. *Sands*, 87 Va. 689, 13 S. E. 148; *State* v. *Kitsap County Superior Court*, 46 Wash. 616, 91 P. 4, 12 L. R. A. (N. S.) 1010, 123 Am. St. Rep. 948, 13 Ann. Cas. 870; *State* v. *Jefferis*, 26 Wyo. 115, 178 P. 909.

There are cases which hold that even though the resignation of an officer is accepted by the proper authority, still it will not be effective until a successor is qualified. *Badger*

v. *United States,* supra; *United States* v. *Green* (C.
C.) 53 F. 769; *Keen* v. *Featherston,* 29 Tex. Civ. App.
563, 69 S. W. 983; *Town of Wonewoc* v. *State Indus-
trial Comm.,* 178 Wis. 656, 190 N. W. 469. In none of these
cases, however, had a successor actually assumed the duties
of the office in controversy. While in the instant case Miss
De La Mare did not formally resign, the legal effect of what
was done amounted to a resignation. It is clear that neither
Miss De La Mare nor the county commissioners believed
that there was any occasion for her to resign. Apparently
they were all agreed that her right to the office was at an
end, and acted accordingly. Her relinquishment of the
office was unconditional with the intention on her part that
her term of office as county treasurer was at an end. It is
equally clear that the county commissioners, in legal effect,
accepted her relinquishment of the office of treasurer to
take effect forthwith. The approval of her appointment as
deputy county treasurer, the supervision of the transfer of
the account of the county at the bank by the accountants
employed by the county commissioners, the installing of
Mrs. Campbell as county treasurer, and her continuance to
act as the county treasurer by and with the consent and ac-
quiescence of the county commissioners up to the time Mr.
Haynes was appointed treasurer, will admit of no other in-
ference. That the county commissioners were the proper
officers to accept the relinquishment of the office by Miss
De La Mare and to pass upon the question of whether or not
Mrs. Campbell had properly qualified for the office is not
open to doubt. The following powers, among others, are
conferred upon the county commissioners:

"The powers of a county can be exercised only by the board of county
commissioners or by agents and officers acting under authority of the
board or authority of law." R. S. Utah 1933, 19-4-2.

"They may supervise the official conduct of all county officers * * *
see that they faithfully perform their duties, direct prosecutions for
delinquencies, and when necessary require them to renew their of-
ficial bonds, make reports and present their books and accounts for in-
spection." R. S. Utah 1933, 19-5-19.

"They may examine and audit the accounts of all officers having the care, management, collection or disbursement of moneys belonging to the county or appropriated by law or otherwise for its use and benefit." R. S. Utah 1933, 19-5-20.

"They may fill by appointment all vacancies that may occur in offices * * * the appointee to hold office for the unexpired term." R. S. Utah 1933, 19-5-21.

"They may do and perform all other acts and things required by law not in this title enumerated which may be necessary to the full discharge of the duties of the board." R. S. Utah 1933, 19-5-50.

"The board of county commissioners shall prescribe by ordinance the amount in which the following county * * * officers shall execute official bonds before entering upon the discharge of the duties of their respective offices, viz.: county treasurer * * * the treasurer shall give surety company bonds, and the premium therefor shall be paid out of the county funds. * * * The bonds and sureties of all * * * county * * * officers [other than commissioners] must be approved by the board of county commissioners before such bonds can be filed and recorded." R. S. Utah 1933, 19-13-11.

The law is well settled, in the absence of statutory provisions to the contrary, that when the authority to fill a vacancy is, by law, vested in a particular commission or officer, such commission or officer is the proper authority to accept the resignation from such officer. The county commissioners are thus the proper authority to accept the resignation of a county treasurer.

Much is said in the briefs of counsel as to what was the status of Mrs. Campbell after the account at the bank was transferred to her, and she was given complete control of the treasurer's office. That she was the de facto county treasurer after January 5, 1933, is not open to doubt. Appellant contends that upon this record she was the de jure county treasurer because there is no competent evidence in the record that she did not file her bond as indicated she would do by the minutes of the meeting of the board of county commissioners which was held on January 5, 1931. It is urged by appellants that the resolution passed by the board of county commissioners on March 3, 1931, was improperly received in evidence for the purpose of showing that Mrs.

Campbell did not file her bond on that day. There is no other evidence tending to show that a bond was not furnished by Mrs. Campbell. In the view we take, as will presently appear, it is not necessary to decide that question. We therefore express no opinion on that phase of the case.

In its final analysis plaintiff's case, as tried in the court below, is bottomed, in the main, on its claim that Miss De La Mare was required to ascertain at all hazards whether or not Mrs. Campbell had in fact filed a proper surety bond. We entertain no doubt but that an outgoing officer owes some duty to see to it that the money, property, books, etc., intrusted to her are delivered to a qualified successor; but upon more matured reflection we have reached the conclusion that the duty is not absolute.

A county treasurer and his official bondsmen are liable for the failure to safely keep or to account for public money which comes into the possession of the former. The fact that such money may have been lost without the negligence or fraud of the treasurer is no defense. ■ *Salt Lake County* v. *American Surety Co.*, 63 Utah 98, 222 P. 600; *Beaver County* v. *Home Indemnity Co.* 88 Utah 1, 52 P. (2) 435. This court, however, has refused to extend the doctrine of strict liability enunciated in these cases to a county treasurer while acting in a ministerial or quasi judicial capacity. *Board of Education of Nebo School Dist.* v. *Jeppson*, 74 Utah 576, 280 P. 1065, 1067. In the latter case, property belonging to the Columbia Steel Corporation had been duly and regularly assessed by the county assessor of Utah county. On the day set for the board of county commissioners to sit as a board of equalization, the officers of the Columbia Steel Corporation appeared before such board of equalization and objected to the valuation placed upon the property of the steel corporation. The board of equalization deferred action until an investigation could be made. The time in which the county board of equalization could sit without the consent of the state board of equalization expired before the complaint of the steel cor-

poration was acted upon. The county board of equalization sought the consent of the state board of equalization to dispose of a number of complaints as to assessments, including the complaint of the steel corporation. Notwithstanding the state board of equalization refused its consent that the county board reconvene for the purpose of considering the amount of assessment of the property of the steel corporation, the county board reduced the assessment of the property of the steel corporation by the sum of $250,000. The county treasurer of Utah county was familiar with the facts and circumstances heretofore recited with respect to the reduction of the assessment. Nevertheless, he accepted the reduction made by the county board and failed to collect the taxes based upon the original assessment. This court held that he was not liable for having so acted. The facts of the foregoing case are not comparable to the facts of the case in hand; but the principles of law therein enunciated have a bearing, if indeed they are not controlling, here. In the course of that opinion it is said:

"It has long been a principle of common law that a ministerial officer whose duty it is to act under the order or the warrant of a court, or of a superior officer, or of an official body, is not liable for obeying his mandate if it appears to be within general jurisdiction of the tribunal, superior officer, or official body that issued it and is fair upon its face. A great weight of authority upholds and emphasizes this principle, as will appear from cases cited later.

"By the term 'general jurisdiction' is meant the field of power and authority defined by law and conferred by law upon a tribunal or an official body or an officer. True it is that certain procedural steps or antecedent acts are generally required in order to invoke the exercise of this general jurisdiction in a particular case or instance. * * * But as to whether a prerequisite step necessary to give an officer or tribunal jurisdiction to act in a particular case falling within general jurisdiction has or has not been taken, a different rule prevails. The steps or acts that invoke jurisdiction are generally facts in pais or performances of a party to the proceeding. An officer holding a writ fair upon its face may assume, and according to most rulings must assume, that the body or tribunal having general jurisdiction to issue writs of that class had special jurisdiction to act in the particular case in which the writ was issued. [Citing cases.]"

As will be seen from the statutory provisions heretofore quoted in this opinion, the board of county commissioners has general supervision over the county treasurer and other county officers. It is the board of county commissioners which accepts resignations, fills vacancies, fixes and approves the bonds of county officers other than the bonds of members of the board. The amount of bond required is left entirely to the discretion of the board. Specifically it is the duty of the board of commissioners to determine when an incoming officer has filed such a bond as entitles her to assume her official duties. Under the facts disclosed by this record, there is no doubt that Miss De La Mare acted in the utmost good faith when she ceased to act as county treasurer, accepted a temporary appointment as deputy treasurer, turned the office over to Mrs. Campbell, and transferred to her the account at the bank. It is true, the county commissioners did not enter an order directing her to do so, but in legal effect what was done on January 5, 1931, amounted to just that. When the county commissioners together with their appointed public accountants and the county attorney participated in the installment of the recently elected officers, including Mrs. Campbell, it was not to be expected that Miss De La Mare should question the authority of her successor to assume the duties of county treasurer. It is apparent that the board of county commissioners expected Miss De La Mare to relinquish her office and, having done so, the board in effect approved her action. It appointed her temporary deputy treasurer, an office she could not hold if she were in fact the treasurer. Under the supervision of accountants appointed by the board, the account at the bank was transferred to Mrs. Campbell. After the account was so transferred, checks were drawn against the same apparently with the approval of the board. While the minutes of the board of county commissioners which were received in evidence show that no bond had been filed by Mrs. Campbell when the meeting was held at 12 o'clock noon, still the county attorney stated that he was advised that a

bond would be filed that day. The record is silent as to whether or not Miss De La Mare was present at that meeting. Assuming that she was present, still she was entitled to assume from what was said that the bond had been arranged for and that only some formal matter awaited attention, or that if for any reason the bond was not forthcoming she would be timely informed of such fact so that she might take such action as she deemed necessary to protect herself. After Miss De La Mare voluntarily relinquished her office, it is, to say the least, very doubtful if she could have regained possession thereof. So far as made to appear, Miss De La Mare was never informed that her successor had failed to furnish a bond until it became evident that it would be to the advantage or interest of the county to find a treasurer with a bond. If, as this court said in the case of the *Board of Education of Nebo School Dist. v. Jeppson*, supra, an officer who acts under the order of a superior body is not liable for obeying such order so long as it is fair on its face and is within the general jurisdiction of the superior body, it would seem to follow that Miss De La Mare is not liable merely because she transferred the county funds to Mrs. Campbell.

It is the uniform rule that a de facto officer is held to the same degree of accountancy for her official acts as is a de jure officer. Mechem on Public Officers, §§ 336 to 341, both inclusive, pp. 225-227. Thus, Mrs. Campbell, by assuming the duties of county treasurer, may not escape liability because of the failure, if any, on her part to properly perform the duties of that office. So, also, it is "evident that two different persons cannot, at the same time, be in the actual occupation and exercise of an office for which one incumbent only is provided by law. There cannot, therefore, be an officer de jure and another officer de facto in possession of the same office at the same time. Hence, if the officer de jure is in, there is no room for an officer de facto; and if the officer de facto is in, the officer

de jure cannot be in also." Mechem on Public Officers, § 322, p. 216.

If, as the record shows, Mrs. Campbell was the de facto county treasurer from and after January 5, 1931, it necessarily follows that Miss De La Mare was not and could not be in that office. Mrs. Campbell being, as she was, responsible for the manner in which the office of county treasurer was conducted, Miss De La Mare could not well be said to be likewise responsible. Mrs. Campbell having been on January 5, 1931, inducted into office and from that time having complete control of the county funds, the loss of any of such funds occasioned by allowing the same to remain in the bank without legal security is chargeable to her. Moreover, while the parties to this controversy seem to assume that Mrs. Campbell is unable to respond for any loss that the county may sustain by reason of her failure to furnish a bond, there is no evidence which supports such assumption. If Miss De La Mare is to be held responsible for the county funds for any period of time after the same were transferred to Mrs. Campbell, it would seem to follow that her liability would continue indefinitely or until a treasurer with a bond takes control of the funds. We cannot yield assent to such doctrine when, as here, she transferred the county funds and relinquished the office to her elected successor under the direction and with the acquiescence of the board of county commissioners whose duty it was to supervise county officers and pass upon their qualifications. To hold that Miss De La Mare and her surety are liable upon the theory that the former was the acting county treasurer at the time the bank closed is to disregard the facts.

It is next contended that Miss De La Mare did not deliver any money to Mrs. Campbell, but merely transferred to her an obligation owing to the county, and that therefore Miss De La Mare remained liable. Such contention must fail. In 43 C. J. 722, it is said:

"Where a former treasurer directs the funds of the city to be transferred to his successor, and they are thereafter carried on the books of the bank in the name of such successor with his knowledge and acquiescence, the successor, by assuming control and possession of such property, waives any formal check or transfer and accepts the custody of the deposit."

To the same effect is the doctrine announced in the cases of *Lansing* v. *Wood*, 57 Mich. 201, 23 N. W. 769; *Bush* v. *Johnson County*, 48 Neb. 1, 66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673.

From what has been said, it follows that the judgment appealed from cannot stand. It does not follow, however, that defendants are entitled to have a judgment directed in their favor. In its complaint the county complains because Miss De La Mare deposited large sums of money ■ in the Tooele County State Bank without requiring as collateral security for the repayment thereof either a surety company bond, obligations of the United States, or of the state of Utah, or bonds of counties, cities, or school districts of this state. At the time complained of, a public officer having in his custody public funds was authorized to deposit the same in a bank when such funds were secured by "bonds or other obligations of the United States, bonds of the several States of the United States, bonds or other obligations of the State of Utah, and bonds of the several counties, cities, and school districts of this state." When and only when the deposit was so secured were the public officer and his official bondsmen relieved of liability for loss of public funds occasioned by the insolvency of the depository. Laws Utah 1929, c. 46, p. 62. While the county complains because its funds on deposit at the bank were not properly secured, no evidence was offered to show that its moneys could not or would not have been paid to it by the bank at the time Miss De La Mare relinquished the office and transferred the account to Mrs. Campbell. If the Tooele County State Bank was unable to pay the money, or any part thereof, belonging to the plaintiff on January 5, 1931, when the account was transferred to Mrs. Campbell, then and in such case

Miss De La Mare for the full amount and her surety, up to
the amount of the official bond, are liable to the county for
such amount as the bank was unable to pay. The county is
entitled to recover from the defendants such loss, if any, as
was sustained by it because Miss De La Mare failed to re-
quire security as required by law for the money deposited
at the bank during the time she was in possession and con-
trol of that office. So far as appears in this record, the
county has not waived its right to recover any loss which
was so sustained.

The opinion heretofore written in this cause is recalled
and this opinion substituted therefor. The judgment is re-
versed. This cause is remanded to the district court of
Tooele county, with directions to grant a new trial and per-
mit the parties, if they be so advised, to amend their plead-
ings, and for such other and further proceedings not incon-
sistent with the views herein expressed as may be deemed
proper. Appellants are awarded their costs on appeal.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ.,
concur.

WOLFE, Justice (dissenting).

I shall express my opinion to the various issues and argu-
ments advanced in this case by setting out the following
propositions which I think correctly reflect the law: (1)
The constitutional provision respecting the time when an
elective officer takes office does not prevent the Legislature
from passing an act providing that an incumbent shall hold
over until his successor is elected and qualified. (2) That
qualification of the successor as a de jure officer includes
not only the subscription and filing of the oath, but the fil-
ing of an approved bond. (3) That an elective officer has
the right to hold over until his successor is elected and quali-
fied under the statute, but that he cannot be compelled to so
hold over and that he may resign or relinquish his office.
(4) That he must still be exercising some functions of his

office left to relinquish in order to make a resignation. (5) That in the instant case, automatically Miss De La Mare's regular term expired and that she was entitled to hold over until her successor qualified. (6) That she was not required to hold over until her successor qualified and that she did relinquish her office on the 5th day of January, 1931, and the part of the period she was entitled to serve which she relinquished was that part which she was entitled to hold until her successor was qualified; she having already served her constitutional term. (7) That resignation ordinarily requires written resignation accepted by the proper officials and that the proper officials are those who have power to appoint in the case of a vacancy; in this case, the county commissioners. (8) That in this case she did what is equivalent to resigning. She intended to relinquish the office; did all that she could to relinquish it; that such relinquishment was recognized by the county commissioners, in that they appointed her deputy and recognized Mrs. Campbell as holding the office of treasurer. (9) That as to third persons dealing with the treasurer's office and the public generally, Mrs. Campbell was a de facto officer. (10) That a county treasurer relinquishing her office has no authority or power to turn over the moneys to an unqualified successor or a de facto officer (de facto as to third parties only) who has not filed an approved bond. (11) While it may not be the duty of the treasurer who has vacated her office to determine the legal validity of the bond, but only to determine that an approved bond has been filed, yet she has not fulfilled the duties of her office to account for or pay over moneys or safely keep them when she turns them over to a person who has not qualified and in regard to whom she might by a simple inquiry of the clerk determine the qualification. (12) That if she made the effort to determine from the clerk's office as to whether an approved bond had been filed and had been so told, she might have performed her duty in that regard, as it would hardly be her duty to search the records of the clerk's office herself.

(13) In this case she omitted to do the least of diligent things, to make a simple inquiry of the clerk's office as to whether an approved bond had been filed. This gives her the best of the situation. The worst of the situation is that she may have been informed by the county commission that the bond would be filed, which, of course, would put her on notice that it actually had not been filed. (14) That even though she has vacated that part of the period for which she was entitled to hold over, she still had the duty to pay over to a qualified successor the moneys, and if such duty were not performed her bondsmen would be liable even though such duty were a duty which could not take place while she was treasurer (she having already relinquished as treasurer). This bond reads as follows:

"That if the above bounden Isabel De La Mare shall faithfully and truly perform all the duties of his office and shall pay over and account for all funds coming into his hands by virtue of his said office of County Treasurer as required by law, then this obligation to be void. * * *"

Ordinarily, a surety is only liable for the default of its principal committed during the time the principal occupies the office, but I think the surety is liable for a failure to perform the duty to pay over and account even after the office is vacated. At all events, the language of this bond appears to make the surety liable for Miss De La Mare's paying over all funds which she obtained by virtue of her office; that is, whether or not she ceased to be treasurer at the time the duty of paying over should be performed. (15) Therefore, in this case there is a failure of the principal to properly perform a duty for which the surety is liable. (16) The omission of this duty resulted in the loss, because if she had paid over to a properly qualified successor, that successor would have been covered by a bond and such surety would have paid the loss to the failed bank. The chain of causation is not broken. Her failure to pay to a properly bonded successor resulted in the county's losing the money.

The failure of the bank was not an intervening, independent cause. The very purpose of having the bond of a treasurer is to insure, among other things, the payment of the money in a case a depositary fails. When Miss De La Mare, therefore, paid to one who did not have such a bond, she paid to a person who was not properly protected against the loss of public funds. Such payment over, therefore, can be considered as the proximate cause of the loss. (17) The funds were sufficiently turned over to Mrs. Campbell by the transactions which took place in the bank, contrary to some authority. I think the bank was a debtor to the county as well as to the incumbent county treasurer. *Beaver County* v. *Home Indemnity Co.*, 88 Utah 1, 52 P. (2d) 435. When one apparently county treasurer was substituted for another as the bank's creditor, the county remaining throughout the paramount creditor, a sufficient transfer of the funds took place. It did not require an actual delivery of the cash. A transfer of the credit in the bank from one to the other was an efficacious, modern business way of making transfer of funds. (18) The minutes of the county commission are evidence of the acts of the county commissioners, and the preambles and narratives endeavoring to show the motive for the acts may be evidence of the motive but are not evidence of the events or facts which the preambles or other narration purported to state.

It can therefore be seen that I am in accord with the prevailing opinion as to all propositions except (11), (12), (13), (14), and (15). The result arrived at by the prevailing opinion made it unnecessary for the author of that opinion to come to any conclusion as to the matters contained in the above propositions (16) and (18). But I am unable to follow the views of the esteemed Chief Justice in regard to Miss De La Mare having performed her duties in turning over the money to Mrs. Campbell while no approved bond was filed by the latter and with no more diligence than to either assume that such bond was filed or lightly accept the statement of the county commissioners that one would be

filed. We have held treasurers to a very high degree of care and diligence in disposing of and caring for public moneys. The duty to "safely keep" is not discharged by transferring to a treasurer who may, as to creditors or outsiders dealing with the treasurer's office, be a de facto officer, but who, as far as an outgoing treasurer is concerned, is not de facto or de jure a treasurer for the purpose of committing to her charge large sums of public moneys because of failure to qualify. I cannot see that the Jeppson Case has any bearing. The treasurer as far as the safekeeping of public moneys is concerned has a duty absolute, independently of any orders which the county commissioners may give. The duty is statutory, invested in her by force of law independently of and not through the jurisdiction of the county commissioners. Can it be said that any county treasurer could justify in any case for the failure to "safely keep" public funds because she was told to do certain things with the money which were contrary to prudent management, proper diligence, or statutory duty? Her office does not come through appointment by the county commissioners. Her duties are those as prescribed by statute and perhaps certain others arising by instructions from the county commissioners, but the duty to "safely keep" county funds is one which she is required to perform even if it requires her to run counter to instructions of the county commissioners. In former decisions we have held that even destruction of public moneys by an act of God will not relieve the treasurer or his surety. It was said in the case of *Salt Lake County* v. *American Surety Co.*, 63 Utah 98, 222 P. 600, 602: "The statutes of this state make the county treasurer liable on his official bond without any qualification whatever." *Beaver County* v. *Home Indemnity Co.*, 88 Utah 1, 52 P. (2d) 435. Now we permit the treasurer to escape liability on her official bond by turning over the county money to an elected but unqualified person without even the diligence of inquiry at the clerk's office as to whether such elected person has filed an approved bond. We have strained at one camel but swal-

lowed another. I cannot believe that this court, as appears inferable from the main opinion, desires to record itself in favor of a proposition that the county treasurer could escape liability on her bond if she followed instructions of the county commissioners as to what to do with public moneys.

In the light of the former decisions of this court, it is apparent that the duty to "safely keep" is a duty special, absolute, and sacred with the county treasurer, and one which cannot be delegated or the responsibility of a failure to perform which cannot be evaded, escaped, or shared by following any other person's judgment or instructions, whether such person be another official or a private person. No board or official has any "general jurisdiction" to control the duty or responsibility of the treasurer to safely keep public moneys. The prevailing opinion says:

"As far as made to appear Miss De La Mare was never informed that her successor had failed to furnish a bond until it became evident that it would be to the advantage or interest of the county to find a treasurer with a bond."

I can subscribe to the idea that the county commission may be looking for some responsible party from whom to collect but whatever the motive, the law as to responsibility remains the same. Certainly, Miss De La Mare could not expect some one to come and tell her that Mrs. Campbell had not filed a bond. It was part of her duty to determine whether she was turning public moneys over to a properly protected official as part of her duty to "safely keep" such moneys.

I am unable also clearly to determine on which ground Miss De La Mare is exonerated by the prevailing opinion. It first appears to be placed on the ground that Mrs. Campbell was the recognized and acting county treasurer and that Miss De La Mare could then treat her as the de jure treasurer for turning over the money; later it appears to place the decision on the ground that Miss De La Mare followed instructions of the county commissioners who were her

superior officers and which she had a right to follow being fair on their face and within the jurisdiction of the commission. I can see some tenability to the first ground, although I do not agree with it because I believe, as heretofore indicated, that the duty of the outgoing treasurer in turning over public moneys to another person as treasurer involves the requirement to ascertain if the successor was qualified, or at least use due diligence to so ascertain, and that her duty is not fulfilled by dependence on the supposed successor's reputation or recognition as county treasurer together with the additional fact that she is exercising the duties of the county treasurer. That may protect outsiders, such as creditors or others dealing with the treasurer's office, but not a former treasurer turning over to such de facto treasurer the county moneys. As to the second ground apparently advanced by the court's opinion, I think it not only unsound but quite vicious in its consequences. I cannot believe that the commission is superior to the treasurer in the respect that it may give the treasurer orders regarding the disposal of public moneys behind which she may protect herself from responsibility.

For the above reasons, I dissent.